# Wolf's Appeal.

Rents issuing out of land which has been assigned for the benefit of creditors, subject to incumbrances, should be appropriated by the assignee to the payment of principal and interest on those prior liens which would be entitled to the proceeds of the land if sold. It follows, that wage creditors or general creditors of the assignor, have no standing to except to credits claimed in the assignee's account for such application by them of such rents.

May 8, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Lebanon county:* Of July Term, 1883, No. 154.

This was an appeal by Thomas M. Wolf, a wage creditor of the firm of Light & Bros., from a decree of said court in the matter of the account of Samuel L. Light and Asaph S. Light, assignees for the benefit of creditors of Henry Light, John Light and Cyrus Light, individually, and as composing the firm of Light & Bros.

The said assignees filed their second and final account in August, 1879, to which exceptions were filed by Thomas M. Wolf and others, and the account was referred by the court to an auditor to pass upon the exceptions.

Before the auditor (W. G. Lehman, Esquire), the following facts appeared: On November 7, 1874, Henry Light, John Light and Cyrus Light, executed a voluntary deed of assignment of all their property unto Samuel L. Light, Asaph S. Light and Adam E. Mark, in trust, for the benefit of the creditors of the said Henry Light, John Light and Cyrus Light, as individuals, and also for the benefit of the creditors of the firm of Light & Bros., composed of the said Henry Light, John Light and Cyrus Light. This assignment was recorded in Lebanon county the same day.

At the time of said assignment, the said assignors owned as tenants in common, certain real estate in Lebanon county, consisting of a rolling mill, houses and farm, subject to the liens of certain judgments entered more than six months prior to the assignment against the said Henry Light, John Light and Cyrus Light, in their joint and several names. A mortgage had also been given by them to secure one of said judgments.

There was also some real estate in Dauphin county, which passed under the assignment, not material to be specially referred to in this report. The facts relating to the same are, however, recited in the opinion of the court below.

10 OUTERBRIDGE.—35

[Wolf's Appeal.]

Prior to the assignment, the firm of Light & Bros. had occupied the said rolling mill in their business of making blooms and rolling mill iron, and the said Thomas M. Wolf and others had worked for them as laborers, and certain sums were due them by the firm at the date of the assignment for wages.

Subsequently to the assignment, the assignees leased the said rolling mill, houses and farm, and they charged themselves in their present account with the rents received therefrom. By the advice of their counsel they had applied said rents to the payment of one of the aforesaid judgments entered in 1867, and of interest upon two others of said judgments, entered in 1873 and 1874, respectively. They claimed credit for said payments in their account, which resulted in a balance appearing due to the accountants.

To these credits Thomas M. Wolf and others, filed exceptions, and they claimed before the auditor that said rents had been improperly applied to the payment of judgment creditors, for principal and interest; and that they, the exceptants, were entitled to priority of payment as wage creditors of the firm of Light and Bros., or to a pro rata distribution as general creditors.

It further appeared, that prior to this audit the real estate in question had been sold at sheriff's sale, and that said wage creditors had presented their claims before the auditor then appointed to distribute the proceeds of said sale, but their claims were disallowed. Said proceeds were applied to payment of liens of record, which were not reached in full.

The auditor's report, upon these exceptions, was as follows: "Exception is taken, in the third exception, to the credit taken by the accountants of $1,308.18 as a payment made to Jacob Uhrich for the use of Wm. F. Potts, Son & Co., upon the ground that the assignees had no legal right to appropriate the funds in their hands to the prejudice of common and other creditors; and in the fifth, exception is taken to the credit of $2,717.71 for interest paid on judgments held against said assignors, upon substantially the same grounds as in exception third. The account of the assignees shows that the sums so paid, to wit: $1,308.18 and $2,717.71, making a total of $4,025.89, were the greater part of the proceeds issuing out of the real estate of said assignors, since the assignment, in the way of rents and profits."

The main question arising under this head is, in the opinion of your auditor, whether the payments so made—to wit, the payment of $1,308.18 to W. F. Potts, Son & Co., on judgment of the Court of Common Pleas of Lebanon county, original of January Term, 1867, No. 232, revived to April Term, 1872,

No. 279, against the assignors, and which was a lien upon the real estate of the assignors; and the payment of $2,717.71 for interest paid upon judgments of said court which were liens upon the real estate of said assignors, viz: Jacob L. Smith and Michael Naftzger, executors of the last will and testament of John Knoll, deceased, for the use of W. F. Potts, Son & Co., against the assignors of April Term, 1873, No. 226, and the judgment of Henry M. Watts & Sons, against the assignors in the Court of Common Pleas of Lebanon county, of January Term, 1874, No. 179, now for the use of W. F. Potts, Son & Co.,—were in accordance with law,—or whether these sums of money should have been applied pro rata to all the creditors, whether judgment or otherwise.

"It is contended on the part of the exceptants that the rents issuing out of the real estate of the assignors since the assignment, can not be applied to the payment of judgment creditors in exclusion of common and preferred creditors, and to sustain this position the following authorities were cited: Robb's Appeal, 5 Wright, 45; Garrett v. Dewart, 7 Wright, 342; Bank v. Hanson & Porter, 1 W. N. C., 613; Jacob Kohr and wife's assigned Estate, 9 Lan. Bar., Nov. 24, 1877, 96.

"On the other hand it is contended that all the real estate of said assignors out of which said rents and profits accrued since the assignment, was held by them in common, and that the rents so accrued therefrom cannot be applied to partnership debts, to the prejudice of individual creditors. To sustain this position the following authorities were cited: Ebbert's Appeal, 20 P. F. S., 79; Lefevre's Appeal, 19 P. F. S., 122; Appeal Second National Bank of Titusville, 2 Norris, 203; Appeal of Geddes and Wife, 3 Norris, 482.

"Whilst the position taken by counsel of the accountants is undoubtedly a correct one, when directly involving such point of law, yet assuming that the rents accrued from property held by the assignors as tenants in common, the question still remains, can they be appropriated to liens of Light & Bros., in the order of their priority on the record, or do they belong to all the creditors of the Lights (jointly and severally) pro rata.

"That rents are not assets for the payment of debts is, I think, well settled in Pennsylvania. Did the lien creditors have any lien on the rents as they accrued, or after they became payable? We think not. Rents do not partake of the character of real estate, and therefore cannot be bound by judgment as such; and hence your auditor concludes that all the rents issuing out of said real estate, held in common by the assignors, belong to all the creditors of Henry Light, John Light and Cyrus Light pro rata. Firm property it appears

there is none out of which rents issued, and hence firm credi-
tors would be excluded in the distribution of this fund.

" Your auditor therefore surcharges said accountants with
the sums so paid under exceptions third and fifth, the sum
of $4,025.89."

To this report the accountants filed, inter alia, this excep-
tion :

First. The auditor erred in surcharging accountants with
the sum of $4,025.89 or any part thereof. Which exception
the court sustained, in the following opinion by McPHERSON, J.

" In November, 1874, Light Bros., as individuals and as a firm,
made an assignment for the benefit of creditors. They owned
in Lebanon county a rolling mill, forge, some houses and a
farm, from the management and renting of which by the
assignees after January, 1875, certain profits accrued, which
they applied to the payment of a judgment against the assign-
ors entered in 1867, and to the payment of interest on two
other judgments, one entered to April Term, 1873, and the
other to January Term, 1874. There was also some real
estate in Dauphin county, which it does not appear was in
any way connected with the business of the firm, and which
the assignees sold to the holder of the first lien against it for
a sum not equal to the encumbrance, paying him the full
amount of the purchase money without any deduction for the
expenses of its care or the management of the trust. These
transactions were set out in their second and final account,
filed in August, 1879, upon which a balance appeared to be
due the accountants, and certain wage creditors of the firm
excepted, alleging that the rents and profits accruing from
the use of the assigned property since the assignment had
been improperly applied to the judgments referred to, and also
that the real estate in Dauphin county must bear a part of
the expenses. The exceptions have been lost, but will be
found at length in Trustee Docket vol. 3, 211, and it is also
admitted that the only exceptants are wage creditors of the
firm.

" The auditor dismissed most of the exceptions, and the two
just mentioned are the only ones before us, the auditor having
sustained these positions and surcharged the accountants with
the sums paid to the judgment creditors, and with an estimated
sum for expenses such as he thought the real estate in
Dauphin county should bear.

" Upon the argument in regard to this surcharge, objection
was also made to the right of the wage creditors to interfere
at all in the controversy, and this objection we believe to be
well taken. We think they had no interest in the funds

embraced in this account, and that the exceptions must be treated as if they had not been made.

" Whether the real estate in Lebanon county was partnership property or held in common, it seems· clear in either case that the wage creditors, as against the liens mentioned, were not entitled to the rents and profits which accrued, as did all of them, after January, 1875. The recent case of Jones's Appeal, 30 Pitts. Leg. Jour., 375, found also in 1 Chester Co. Rep., 582, and 4 York Leg. Rec., 25, [6 Out., 285], seems to be decisive of this point. There the real estate of a firm was partnership property and was assigned for the benefit of creditors. A mill upon the land was burned and its machinery so injured by the fire as to be sold for old iron. A crop of grass also was grown upon the land after the assignment, and the wage creditors claimed the proceeds of both crop and machinery. They were, however, awarded to lien creditors, and the Supreme Court expressly approves this part of the decree, although the opinion is mainly concerned about other questions. The principle of this decision seems to us to cover the case of rents. If the machinery which in that case helped to give value to the land, and the grass which grew upon it after the claims for wages had accrued, partook of its character to such an extent as, equitably at least, to belong to the lien creditors after severance, it would seem plain that the rents and farm profits here, which the land produced and which wholly accrued after these claims for wages had become due, ought to follow a similar course. The income or product of an assigned estate is held by the assignee in trust for all the creditors of the assignor according to their legal and equitable rights, Bausman's Appeal, 9 N., 180; and as all the judgments referred to were entered more than six months before the assignment was made, and therefore before the labor was performed, it is hard to see why the substantial· owners of the property have not at least an equitable right to the whole of what it produces. Burkholder's Appeal, 13 N., 524, regards the lien creditors of an assignor in the same light, viz., as substantial owners of his real estate, and divides among them the interest on deferred payments, even after the land has been sold by order of court.

" Moreover, the exceptants presented their claim to the auditor, who distributed the proceeds of the real estate, sold under execution, and were refused participation on the express ground that the liens to which the money was awarded existed long prior to the time when the wages were earned, a finding of fact which was not disputed and which was certainly decisive against their claim upon that fund. The liens thus referred to by the auditor are the same now in question, and

with others not reached much exceeded the value of the land. If then, as against these liens, the claim of the wage creditors could not be paid out of the "proceeds of sale" of the real estate, a subject expressly within the words of the Act of 1872, how, as against them, can it reach subsequently earned rents and profits, a subject not named in the Act and apparently not within its provisions? Such a claim upon these rents and profits cannot have preference without authority of law, which we do not find, and in our opinion cannot, for the reasons given, even stand upon the same footing as the liens in question here.

"As to the land in Dauphin county, there is nothing to show that it was connected with the business of the assignors, and certainly without some proof of that fact, the exceptants, as against lien creditors, had no claim upon it and have no interest in the fund it produced.

"It follows that, as the accountants received no money from any other sources than rents and the sale of the land in Dauphin county, the wage creditors could not be paid from either fund, and that in consequence they have no interest in the account and no standing to file exceptions: Smith v. Reiff, 8 Harris, 364; McCabe's Appeal, 10.Harris, 427; Greene v. Tyler, 3 Wr., 365; Shaw's Appeal, 10 Wr., 407; Housekeeper's Appeal, 13 Wr., 141.

"The auditor's report is set aside, the exceptions to the account dismissed and the account as filed is confirmed absolutely."

Thomas M. Wolf took this appeal and filed this assignment of error:

"The court erred in setting aside the auditor's report, dismissing the exceptions to and confirming the account absolutely."

*Josiah Funck* (*John Benson* and *P. H. Reinhard* with him), for the appellant.—The rents received by the assignees from the assigned real estate were improperly appropriated to judgments against the assignors, obtained prior to the assignment, and to interest accrued thereon. Judgments are bare liens, and the holders can exercise no dominion over the land bound by them. They must first be satisfied out of the personal property of the debtor, if he has any. The plaintiff in the judgment is not interested in the land, as land, but only in his lien. He has neither *jus in re* nor *ad rem*, as regards the defendant's property. He has a lien, and the law gives a right to satisfaction out of the property, and that is all; and a judgment creditor for balance of purchase money due has no insurable interest in the real estate sold: Grevemeyer v. The

Southern Mutual Fire Ins. Co., 12 P. F. S., 340, and the authorities cited in the opinion. Rents accruing subsequently to the sheriff's sale and before acknowledgment of sheriff's deed, belong to the defendant in the suit: Garrett *v.* Dewart, 7 Wr., 342. Rents are not assets for the payment of the debts of a decedent; if the administrator receives rent from the real estate of his decedent, he is but a trustee for the widow and heirs; and a mortgagee cannot enforce the payment of interest on his mortgage from the rents collected: Robb's Appeal, 5 Wr., 46. Nothing can be more erroneous than the conclusion of the court below that the judgment lien creditors are the substantial owners of the real estate, and therefore entitled to these rents. Jones's Appeal, upon which the judge below relied to sustain him in his ruling, decides no such question. It was there held that grass and old iron, the refuse of a mill that had burned down during the pendency of the trust, belonged to the judgment creditors, and that the proceeds thereof could not be applied to the payment of wage claimants. This doctrine is entirely sound. It seems to have escaped the notice of the court that both partook of the character of real estate, and as the labor claims accrued after the judgments had attached no wage claimants could be paid out of the proceeds of that real estate, because expressly forbidden by the statute under which they claimed their preference. Under the Act of April, 9, 1872, and the general policy of the law of preferring labor claimants, the appellant was entitled to be paid in full out of the rents: Reed's Appeal, 6 Harris, 237. But if not entitled as a preferred creditor, the rents, under the express trust in the assignment, should be distributed pro rata among all creditors, including the appellant.

*Wm. Derr* (*Grant Weidman* with him), for the appellees.—
The real estate was held and owned by the assignors as tenants in common, and hence the proceeds, if sold, would go to the individual lien creditors: Lefevre's Appeal, 19 P. F. S., 122; Ebbert's Appeal, 20 P. F. S., 79. So, also, the fund earned by said real estate after the assignment, in the shape of rent, must be distributed in the same way: Bausman & Herrs's Appeal, 9 Norris, 180. These wage creditors, having no interest in the real estate, had no right to file exceptions to the account: McCabe's Appeal, 10 Harris, 427.

The opinion of the court was filed May 19, 1884.

PER CURIAM. This is not a case of distribution. The contention arises on exceptions filed to the account of assignees under a voluntary deed of assignment for the benefit of creditors. The appellant sought to object to the account, on

the alleged ground that he was a preferred creditor of the assignor. The court found that his claim was not sustained; that he had no interest in the account to which he excepted, and therefore no standing to file exceptions. In case of a sale of the land it is very clear, his claim could not be allowed to the prejudice of a prior lien creditor. We think the mere rents of the land in the hands of assignees not being the product of business managed and carried on by them, but solely the product of the land itself, should be applied on those prior liens which would be entitled to the proceeds of the lands, if sold. This we understand to be the ground on which the court ruled the case. The conclusion is sustained for reasons expressed in Bausman's Appeal, 9 Norris, 180, and Burkholder's Appeal, 13 Norris, 524.

> Decree affirmed, and appeal dismissed at the cost of the appellant.