# Ellen O'Donnell *v.* Charles DuPont Breck, Appellant.

*Attorney at law—Fiduciary relation of attorney and client.*

The principles governing the fiduciary relation extend to every possible case in which there is confidence reposed on the one side and the resulting superiority and influence on the other. The relation, and the duties involved in it, need not be legal; it may be moral, social, domestic or merely personal. In all dealings with a client, the highest degree of fairness and good faith is required of an attorney; the courts view all such transactions with suspicion and examine them with the utmost scrutiny. No trust shall be violated, no confidence misapplied is the stern order of the law.

*Attorney and client—Settlement of dispute—Question for jury.*

An attorney learning from A that she would be willing to pay $16,000 for a property, secured an option on it for $14,500 and sold it to her for $16,000. A, learning of this fact, repudiated the deal and brought suit to recover the money paid on account. The evidence was conflicting as to the existence of the relationship of attorney and client. *Held*, that this question was properly left to the jury, as also whether a settlement had been made after due consideration of the matters in dispute between the parties.

*Attorney and client—Scrutiny of court—Degree of fairness exacted.*

In all dealings with a client, the highest degree of fairness and good faith are required, and where the question turns on the existence of this relationship or merely the relationship of vendor and vendee and where such question is seriously controverted, it is properly for the jury.

Argued Jan. 13, 1898. Appeal, No. 25, Jan. T., 1898, by defendant, from judgment of C. P. Lackawanna Co., May T., 1895, No. 70, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, ORLADY and PORTER, JJ. Affirmed.

Assumpsit. Before SEARLE, P. J., of the 34th judicial district, specially presiding.

It appears from the evidence that the plaintiff in this case had some conversation with the defendant, an attorney at law, in reference to the purchase of a piece of real estate in which she indicated the price she was willing to pay therefor as $16,000. Defendant immediately secured an option on the premises at $14,500, and made an agreement to sell it to plaintiff for $16,000, she paying $500 on account of the bargain.

Plaintiff subsequently repudiated the agreement and demanded back her payment. After some controversy she received a check for $260, which defendant alleged was in full settlement of all disputes. The evidence was conflicting whether the relationship between plaintiff and defendant was that of principal and agent, or attorney and client, or simply that of vendor and vendee. The court left this question to the jury.

Other facts appear in the opinion of the court.

Verdict and judgment for plaintiff for $345.28. Defendant appealed.

*Errors assigned* were (1) in charging the jury as follows: "If, on the other hand, you find that he acted as her attorney for the purpose of purchasing the property as cheaply as he could, and received the money from her for that purpose, and that when he gave $260 back, she refused to receive it in settlement, but told him, as she claims, that she should pursue him for the balance, if you believe that, and do not believe the testimony of Mr. Breck and of Mr. Reynolds, then your verdict should be for the plaintiff for the balance, with interest to this date." (2) In his answer to plaintiff's second point. The request and answer are as follows: "2. The fact that the defendant wrote upon his check 'In full settlement of all matters to date,' when he returned only a part of the plaintiff's money to her, and that plaintiff cashed the check, will not prevent plaintiff showing that she did not accept it in full payment, but told defendant that she would follow him for the rest of her money. *Answer:* That point is affirmed." (3) In refusing defendant's request for binding instructions. The point and answer are as follows: "Defendant requests the court to charge that the verdict must be for the defendant. *Answer:* We refuse so to charge." (4) In entering judgment upon the verdict.

*C. Comegys*, for appellant.—Before parol evidence can be admitted or allowed to contradict the terms of a release, or other written instrument, fraud, accident or mistake, involved in the execution of it, and actually producing it, must be shown by clear, precise and indubitable testimony: Clarke v. Allen, 132 Pa. 40; Irvin v. Irvin, 142 Pa. 271.

The law favors the adjustment of such controversies without

judicial intervention, and will not permit the creditor to accept and retain money which has been tendered by way of compromise, and then successfully litigate with his debtor for the recovery of a larger sum : Fuller v. Kemp, 138 N. Y. 231 ; Rubber Co. v. Wringer Co., 58 Vt. 551 ; Porter v. Douglass, 44 Conn. 541 ; Brick v. Plymouth County, 63 Iowa, 462.

The case of McGlynn v. Billings, 16 Vt. 329, is on all fours with this case.

*William Jessup Hand*, for appellee.

OPINION BY ORLADY, J., February 19, 1898 :

The facts in this case were so seriously controverted that the learned trial judge properly submitted them to a jury, who adopted the plaintiff's contention and returned a verdict in her favor.

The plaintiff alleged that she paid the money to the defendant as her attorney, to be by him applied as a purchase money payment on certain real estate which she desired to purchase. This the defendant denied, and insisted that he was not representing her as an attorney in any sense, and that the transaction was only that of a broker negotiating a sale of real estate.

In Reid v. Stanley, 6 W. & S. 369, it is held that if one is applied to, as an agent, to investigate the title of another which he has an interest in purchasing, and he undertakes the duty, he cannot use the information thus acquired to the injury of his principal. He is bound to disclose to him any material information obtained concerning the title, and if he conceals it and buys it himself, it is a fraud.

In all dealings with a client, the highest degree of fairness and good faith is required of an attorney ; the courts view all such transactions with suspicion, and examine them with the utmost scrutiny, and if they present even a suggestion of unfair dealing the burden of proof lies on the attorney to show the honesty and good faith of the transaction, and that it was entered into by the client freely and understandingly : 3 Am. & Eng. Ency. 332.

The principal fact in the case, was whether the defendant was the attorney of the plaintiff in this transaction, and like any other controverted fact it must be determined, under the evi-

dence, by a jury. The plaintiff insisted that he was her attorney, and the defendant as earnestly denied that the relation existed, and in this he was corroborated by another witness, but the jury decided to find in favor of the plaintiff, and, as there was sufficient evidence to warrant the verdict, it must be adopted as conclusive.

It is difficult to determine just when the relation between an attorney at law and the person acting on his advice is not a confidential one. The esteem in which attorneys at law are held is founded upon the reputation of the profession for learning and integrity, and the uniform confidence in the advice or suggestions given by them to those requiring their aid, is the highest encomium of the profession.

The courts have carefully refrained from defining the particular instances of a fiduciary relation in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which there is confidence reposed on the one side, and the resulting superiority and influence on the other. The relation, and the duties involved in it, need not be legal; it may be moral, social, domestic or merely personal: 2 Pomeroy's Eq. Jur. secs. 955, 956; 1 Story's Eq. Jur. secs. 212, 310, 311.

There must be no misrepresentation, and no concealment or suppression of any fact within the knowledge of the agent which might influence the principal, and the burden of establishing perfect fairness is on the agent. Greenfield's Estate, 14 Pa. 489, Henry v. Raiman, 25 Pa. 354, Shoemaker v. Stiles, 102 Pa. 549, Yardley v. Cuthbertson, 108 Pa. 395, Darlington's App., 86 Pa. 512, Worrall's App., 110 Pa. 349, Darlington's App., 147 Pa. 624, and Goodyear v. Brown, 155 Pa. 514; furnish striking illustrations of the jealous care which is shown by the law under the rule of public policy, in treating all cases as constructive frauds, when any confidential adviser seeks to secure undue advantages, bargains, or gratuities by availing himself of the good nature, liberality, credulity, or necessities of a person reposing trust and confidence in him.

The name given to the relation is not material. The law looks to the substance and not at its shadow. The effect which is produced upon the unduly or unfairly impelled person is the

result which is prohibited. No trust shall be violated, no confidence misapplied, is the stern order of the law. Had the defendant informed the plaintiff that he had secured or could secure an option on the property for $14,500 which she desired to purchase, and for which he expected her to pay $16,000, it is not reasonable to suppose that she would have paid him the disputed $500.

It was further contended by the defendant, that after the controversy arose between them, the parties met with full knowledge of the facts and compromised their differences ; the plaintiff agreeing to accept " in full settlement of all matters to date " the sum of $260, and in pursuance of this understanding, that sum was paid. This fact was also disputed, the receipt of the named sum was admitted, but she denied that she had made any agreement in regard to the balance, and claimed that at the time the money was paid she had said that she would follow him for the balance and had afterwards asked him for it.

The check with its interlined receipt was open to explanation, and if the defendant did not have the legal right to retain the $500 as a whole, it was because he held a confidential relation to the plaintiff at the time he received it, and was not after that relation had been established entitled to keep back any part of it. If the whole sum was due to the plaintiff, the agreement to accept a smaller sum in satisfaction of it was without consideration, and cannot be enforced, and the actual acceptance of such smaller sum is not a good discharge of the debt, even as accord and satisfaction : Martin v. Frantz, 127 Pa. 389.

The assignments of error are overruled and the judgment is affirmed.