## Knee, Appellant, *v.* McDowell.

*Contract—Confidential relations—Expression of opinion of court.*

Where a woman twenty-seven years of age occupies towards a man eighty-four years old the relation of friend, nurse and caretaker, and receives from him a check for a large sum amounting to about a quarter of his whole estate, for services alleged to have been rendered, the burden is upon the recipient of the check to give a distinct, clear and full explanation of the circumstances under which the check was given.

In such a case the court cannot be convicted of reversible error in expressing its opinion to the jury as follows: "In our opinion you ought not to find from the evidence that the plaintiff is entitled to a verdict for the full amount of this check; that she did not give full consideration for it; that at the time it was made the decedent was not indebted to the plaintiff in the sum of $5,000. This is only our opinion from the evidence in the case. It is not binding upon you. It is your province to find the facts. You are not bound by the opinion of the court. You can disregard any opinion the court may express."

Submitted May 11, 1904. Appeal, No. 78, April T., 1904, by plaintiff, from judgment of C. P. Mercer Co., Jan. T., 1900, No. 8, on verdict for plaintiff in case of Mary L. Knee v. A. McDowell, executor of I. D. Cole, Deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit on a check alleged to have been given for services. Before MILLER, P. J.

The court charged in part as follows :

[The defendant further requested that we instruct you as a matter of law that "there is no sufficient evidence to warrant the jury in finding that the terms of the alleged contract were mutually agreed to by said parties." This we refused, but we

say to you, gentlemen, that in our opinion you should not find from the evidence that there was a binding contract entered into between the plaintiff and I. D. Cole at the time the said check was made, whereby I. D. Cole was to remain with the plaintiff during the rest of his life, and that said check was intended by him to cover future services to be rendered by the plaintiff in boarding, nursing, maintaining and caring for him. This, however, is the opinion of the court, on the evidence, and is not binding instructions to you. If, in your view of all the evidence your opinion is different from that expressed by us, then let your opinion influence your conclusions on this subject, and disregard the opinion of the court as expressed. That is, while the court may be of the opinion that certain facts are not proven, yet where there is evidence to submit to the jury of such facts, it is the duty of the court to submit it; and while we have the right, and in some cases it is our duty, to express an opinion on the evidence, it is at last your province to find the facts. You have the evidence of the witnesses as to when Mr. Cole commenced going to the plaintiff's house. The deposition of Mrs. Cole, the wife of I. D. Cole, was offered by the plaintiff, and if you believe it, it tends to show that up to about the month of September, 1895, a little over two years before he died, he was not on speaking terms with the plaintiff; that soon after September, 1895, he commenced to visit the plaintiff, occasionally at first, the frequency of his visits increasing as time passed, until, according to the testimony of Mrs. Cole, he spent fully one half of his time at the plaintiff's.] [21]

[If from all the evidence in the case, you find that Mr. Cole and the plaintiff were dealing with each other on the basis of their relationship and of favors mutually exchanged, then we say to you that this would negative any inference of a contract express or implied, and in that event the services which plaintiff rendered in pursuance of such mutual relationship and understanding would not be any consideration to support the check in suit. We say to you further, that in view of the facts in this case, it is incumbent upon the plaintiff to show by fair, full and clear proof that I. D. Cole made the check in suit as his free and intelligent act, that it was fully explained to him, and that he executed it with a thorough understanding of the whole transaction and its consequences.] [23]

[Mr. Cole at the time this check was made, October 26, 1897, was eighty-four or eighty-five years of age. The attending physician, who had attended him for twenty-three years, testified that at this time he was a very sick man, that his condition was very bad, that his chances of recovery were very poor. While he was in this condition, if you believe the testimony of Dr. Heilman, the plaintiff had this check made. The person who filled it up ready for the signature of Mr. Cole was not asked to be a witness to its signing. While the plaintiff and Mr. Cole were alone in his bedroom, with no one but they two present, it was signed. It is for you to determine from all the evidence whether or not the making of this check by I. D. Cole was his free and intelligent act; the time of the day that it was signed, the condition of Mr. Cole, the circumstances surrounding it, whether he executed it with a full understanding of the whole transaction. It is incumbent upon the plaintiff to satisfy you affirmatively of these facts. If she has failed to satisfy you by the evidence, she cannot and ought not to recover.] [24]

[Our Supreme Court in Darlington's Estate, 147 Pa. 630, uses this language: Where a paper has been drawn up by a person for his own benefit, or where he takes a considerable benefit under it, the presumption lies strongly against it, and it requires to be proved by satisfactory evidence dehors the instrument, that it was the free and voluntary act of a capable testator, and executed with a full knowledge of its contents and effect. It is almost unnecessary to add that this is a rule of general application to all kinds of instruments, the procurers of which are largely beneficiaries by virtue of their operation.] [25]

[We leave it to you, therefore, to say under the instructions we have given you as to the law whether the check was given under the conditions claimed by the plaintiff, for a full consideration, or for a partial consideration, or whether it was given without any consideration whatever. If you find that there was a full consideration for the check, that it was the free, intelligent act of Mr. Cole, that he understood the nature of the transaction he was performing, then your verdict would be for the plaintiff for the full amount of the check and interest from October 26, 1897. If you find there was a failure of consideration for any portion of the check, whether large or small, you

will deduct that amount, and for the balance you will find a verdict for the plaintiff with interest from October 26, 1897. If you find there was an entire failure of consideration for the check, that the plaintiff had been paid in full by Mr. Cole for all of the services rendered to him by her, outside of this check, then your verdict should be in favor of the defendant.] [26]

[In the view we take of this case, we think it is our duty to express to you our opinion of the evidence. In our opinion, you ought not to find from the evidence that the plaintiff is entitled to a verdict for the full amount of this check, that she did not give full consideration for it; that at the time it was made, October 26, 1897, the decedent was not indebted to the plaintiff in the sum of $5,000. We have arrived at this opinion for the reason that the total number of months the plaintiff boarded Mr. Cole could not have exceeded in the neighborhood of two years,—the defendant contends only one year; that the uncontradicted evidence is that the value of such services in the neighborhood where plaintiff lived did not exceed $4.00 per week; that Mr. Cole was sick and bedfast for seven weeks, and that services rendered by plaintiff to him during the said period were not worth, under the evidence, to exceed $25.00 per week, and which the plaintiff herself fixes in her first statement of claim at the value of $150, gross; that all the services the plaintiff rendered Mr. Cole, as shown by the evidence, in the opinion of the court, could not exceed the sum of $400 to $600; that Mr. Cole on October 14, 1897, paid plaintiff $500.] [27]

Verdict and judgment for plaintiff for $1,277.66. Plaintiff appealed.

*Errors assigned* among others were (21, 27) portions of charge as above, quoting it.

*A. W. Williams*, for appellant.

*S. S. Mehard, J. A. McLaughry, J. C. Miller, J. P. Whitla* and *Q. A. Gordon*, for appellee.

OPINION BY ORLADY, J., July 28, 1904:

This was an action of assumpsit brought to recover the

amount of a check given by I. D. Cole to the plaintiff, for the sum of $5,000.

The plaintiff's statement of claim set out the consideration of the check to be boarding, lodging, nursing, care and attention of I. D. Cole to October 26, 1897,—the date of the check. During the trial an amendment of the statement was permitted so as to make the check cover both past and future services, until the death of Mr. Cole on December 6, 1897.

The plaintiff was twenty-seven years of age, and related by marriage to I. D. Cole, who was over eighty-four years old. Mr. Cole was married and had a wife living at his home a few miles distant from the residence of the plaintiff. During the last years of his life he became attached to the plaintiff and remained at her house about fourteen months of the last two years of his life, during which period he paid bills of her contracting amounting to about $200, and gave her a check for $500, on which she received the money. The evidence shows beyond all question that this old man had an unusual, if not an unnatural preference for the plaintiff as against his own wife and family ; and that his frequent visits to her home clearly evidenced his preference for her society to that of any other person. A great deal of testimony was taken showing the relation existing between these parties. It was clearly established that she was attentive to his wants, and that she had rendered necessary and faithful services for practically two years, the compensation for which, under this verdict, is about $700, received previous to his death, and this verdict of about $1,300; consequently she was not wholly without reward.

The check in suit was drawn by a young girl who testified that she wrote the check at the request of Mrs. Knee, while Mr. Cole was sleeping, but that she did not see it signed. The defense was want of consideration. The plaintiff presented twelve points, all of which were affirmed except the last, which is as follows: " That the question of whether undue influence was or was not exercised, is not one that can be considered under this form of procedure." This was refused, and in the charge to the jury the learned trial judge, after quoting from Darlington's Estate, 147 Pa. 624, stated : " We leave it to you, therefore to say, under the instructions we have given you as to the law, whether the check was given under the conditions

claimed by the plaintiff for full consideration or for a partial consideration or whether it was given without any consideration. If you find that there was a full consideration for the check; that it was the free, intelligent act of Mr. Cole, with an understanding of the nature of the transaction he was performing, then your verdict should be for the plaintiff for the full amount of the check with interest. If you find there was a failure of consideration for any portion of the check, whether large or small, you will deduct that amount, and for the balance you will find a verdict for the plaintiff with interest. If you find there was an entire failure of consideration for the check; that the plaintiff had been paid in full by Mr. Cole for all of the services rendered to him by her, outside of this check, then your verdict should be in favor of the defendant. In our opinion you ought not to find from the evidence, that the plaintiff is entitled to a verdict for the full amount of this check; that she did not give full consideration for it; that at the time it was made the decedent was not indebted to the plaintiff in the sum of $5,000. This is only our opinion from the evidence in the case. It is not binding upon you. It is your province to find the facts. You are not bound by the opinion of the court. You can disregard any opinion the court may express."

The check was presented for payment to the banker on whom it was drawn the day after its date, and payment was refused for the reason that Mr. Cole did not have sufficient money to his credit to meet it; it was then left with the banker until after his death a few months subsequent. The jury returned a verdict of $1,277.66, and the plaintiff brings this appeal. While there are twenty-eight assignments of error, all may be considered together.

The estate left by Mr. Cole aggregated, in real and personal property, about $20,000. Under the testimony it is clearly established that this plaintiff held a relation of trust and confidence as friend, nurse, and caretaker, hence the receipt of the check, under the circumstances, requires a distinct, full and clear explanation. Under the rule of public policy the law shows a jealous care in dealing with a case of constructive fraud, and when a confidential adviser seeks to secure undue advantages, bargains, or gratuities, by availing himself of the good nature, liberality, credulity or necessity of the person who

reposes trust and confidence in the one who receives the advantage, the name given to the relation is not material. The law looks to substance and not at its shadow. The effect that is produced upon the unduly or unfairly impelled person is the result that is prohibited. No trust shall be violated, no confidence misapplied, is the stern order of the law.

In Worrall's Appeal, 110 Pa. 349, the relation was between a sick man and his nurse ; in Darlington's Estate, 147 Pa. 624, it was between an uncle and nephew who acted as attorney in fact; in Yeakel v. McAtee, 156 Pa. 600 ; Coleman's Estate, 193 Pa. 605, and Carney v. Carney, 196 Pa. 34, it was between parent and child ; in Simonds' Estate, 201 Pa. 413, it was between father and an adopted daughter, and in O'Donnell v. Breck, 7 Pa. Superior Ct. 24, it was between attorney and client.

The trial judge had pronounced views as to the effect to be given to the evidence in the case, which he expressed to the jury in unmistakable terms. He, however, as plainly states that the jurors were to dispose of the case unrestrained by the views of the court. In Lerbig v. Steiner, 94 Pa. 466, it is stated : " As a general rule, the judge should submit the facts without expressing his opinion thereon, and without making an argument in favor of either side, is safer, more satisfactory and better accords with the right of parties to have disputed facts decided by a jury. It is difficult for a judge to act as the advocate for one of the parties without giving just cause of offense. Exceptional cases arise where it is the duty of the judge to express his opinion of the facts and guide the minds of the jury to a correct view of the evidence ; and therefore it has been settled that when he does so, without misleading or controlling them in the disposition of the facts, there is no ground for reversal."

Ample warrant for the remarks of the court, taken as a whole, will be found in Bitner v. Bitner, 65 Pa. 347 ; Follmer v. McGinley, 146 Pa. 517 ; Fredericks v. Northern Central Railroad Company, 157 Pa. 103 ; Price v. Hamscher, 174 Pa. 73 ; and the same rule obtains even in criminal court. See Johnson v. Commonwealth, 115 Pa. 369 ; Commonwealth v. Orr, 138 Pa. 276 ; Commonwealth v. Buccieri, 153 Pa. 535 ; Commonwealth v. Van Horn, 188 Pa. 143.

After a careful examination of the whole record, the assignments of error are all overruled, and the judgment is affirmed.