## Alexander's Estate. No. 2

*Joseph Grubb, Jr.*, of *Newbourg & Grubb*, for exceptants.

*Rambo & Mair*, contra.

LADNER, J., December 16, 1938.—The exceptions before the court are to the disallowance by the auditing judge of a claim amounting to $15,570, for unpaid interest due Leonora L. Koecker, the holder of four mortgages on four properties owned by decedent. No testimony was offered in support of the claim but the auditing judge was given a stipulation of facts upon which he was asked to rule the claim. The learned auditing judge in his adjudication correctly summarizes the facts agreed upon in the stipulation and so far as they relate to the exceptions filed they are as follows:

Decedent had been exceptant's agent and attorney in various matters for upwards of 38 years. He represented her in the purchase of four mortgages, two of $15,000 each secured on 1614 Summer Street and 1532 Cherry Street; one of $22,000 on 225-27 North Twelfth Street, and one of $12,000 on 226 North Twelfth Street. Decedent later acquired title to all of these properties at various times and in the case of 1614 Summer Street on the very day that the mortgage was assigned. Decedent was neither the mortgagor nor the obligor in any bond accompanying these mortgages. Decedent defaulted in the payment of interest on all of these mortgages about the

year 1930 and continued such default to the time of his death. From one of these properties, 1614 Summer Street, decedent collected to the date of his death $12,575 in rent, and thereafter his executors collected $1,440 more from this property. All of the properties were foreclosed and bid in by claimant after decedent's death.

The attorney for exceptant argues that by reason of the confidential and fiduciary relationship between the parties a personal obligation arose on the part of decedent to apply all rents collected by him on account of the interest on the mortgages in default, and that his estate must now answer.

In disallowing the claim the learned auditing judge said:

"Where the owner of a property, subject to a mortgage, fails to pay the interest when it becomes due, the mortgagee may take possession of the property and may apply the revenue therefrom to the payment of what is due him as mortgagee, or he may permit the owner to remain in possession of the property and institute foreclosure proceedings. If no foreclosure proceedings are begun and the owner is allowed to remain in possession of the property, he has a right to collect the rentals therefrom, and has the power to do with them what he pleases, and no personal liability arises.

"This principle is so well established that a citation of authorities is unnecessary."

We all agree that this is a correct statement of the law and unless the confidential relationship existing between decedent and his client called for the application of a different principle the exceptions must be dismissed. We see nothing in the transactions as regards three of the properties which, according to the stipulation, produced no rent, that calls for the application of any different rule, because the mere confidential relationship of itself cannot serve to impose upon decedent a personal liability that was not expressly assumed: Blood, Executrix, v. Crew Levick Co., 177 Pa. 606 (1896). Therefore, we

approve the disallowance by the learned auditing judge of the unpaid mortgage interest due on the mortgages secured against 1532 Cherry Street, 225-27 North Twelfth Street, and 226 North Twelfth Street.

However, the situation with respect to the 1614 Summer Street mortgage is different in that during the period in which the decedent failed to pay interest he collected rents, which after deducting the amount payable for taxes and repairs therefrom left him in possession of a sum vastly greater than what was necessary to discharge the unpaid instalments of interest. We think, and the learned auditing judge upon further reflection agrees with us, that this situation coupled with the confidential relationship between decedent and claimant calls for the allowance of the claim to the extent of the interest unpaid on this particular mortgage for the following reasons:

A mortgage in Pennsylvania while generally regarded as a mere encumbrance or lien so far as third parties are concerned is nevertheless, as between the mortgagor (or his successors in title) and the mortgagee, strictly a conveyance on condition—a conveyance which usually includes an express assignment of the rents, issues, and profits, so that upon breach the mortgagee can not only take possession and hold the same until the default has been cured or the mortgage repaid, but may make the assignment of the rents, issues, and profits effective by merely notifying the tenant to pay the rent thereafter to the mortgagee, his attorney or agent: Miles et al. v. Abe Kolsky & Co., Inc., 13 D. & C. 579 (1930), Finletter, P. J.; see also the excellent and illuminating opinion of President Judge Keller in Bulger v. Wilderman et al., 101 Pa. Superior Ct. 168 (1931), and see Harper v. Consolidated Rubber Co., 284 Pa. 444, 451.

Were this distinction carried out to its logical conclusion, it would seem that the mortgagor or his successors in title would upon default be liable to account for the rents, issues, and profits to the mortgagee even though

the mortgagee gave no prior notice. But in Talbot's Appeal, 2 Walk. 67, the Supreme Court held otherwise, though it should be said, the instrument there construed was not our usual form of mortgage but a deed of trust drawn in the Maryland or District of Columbia style. Nor is it clear from the report of the case that that deed of trust contained any express assignment of the rents, issues, and profits. However, the view which we take of the effect of the confidential relationship between decedent and claimant and to which we now advert, makes it unnecessary to examine further whether the right of a mortgagee to rents, issues, and profits, as against a mortgagor, is dependent upon notice as well as default.

Here we have a relationship between decedent and claimant as attorney and client that continued over a period of 38 years. Decedent as attorney represented claimant as one of the executrices in the settlement of her father's estate in 1896. He represented her in a similar capacity in the settlement of her mother's estate in 1912. He represented her in "satisfaction of mortgage proceedings", C. P. No. 5, June term, 1917, no. 4910; also in 1923 in proceedings before the United States Treasury Department relative to her income tax return of 1918; also in foreclosure of mortgage proceedings 1339 Vine Street, C. P. No. 3, June term, 1932, no. 14,894. He evidently represented her in the acquisition of the mortgage on 1614 Summer Street, for he certifies as her attorney to her address on the mortgage, and as her agent on the assignment of the mortgage on 225-27 North Twelfth Street. He acted as her agent in collecting interest on mortgages held by her, secured on the properties of which he afterwards became the owner as well as other properties. He frequently deposited items in her personal checking account at her bank; sometimes in her company and sometimes in her absence. He frequently accompanied her when she opened her safe deposit box. The relationship of attorney and client remained apparently unbroken at the time of decedent's death, for

the executors accounted to the claimant for interest collected by decedent which had not been paid over at the time of his death.

In view of the facts so recited it is not too much for us to say that decedent was the "family" attorney and counselor of claimant. A relationship of attorney and client where long continued as here, and especially where the client is a single woman of advanced years, soon ripens into one of utmost trust and confidence and finds the client leaning more and more heavily upon the attorney as the years go by.

The courts have been quick to recognize this fact and have been alert for the good name of the profession to extend the client every possible protection and redress against an attorney who has strayed from the paths of rectitude or has taken advantage of the trust and confidence reposed, lest the public be deterred from continuing the high regard in which the legal profession is generally held. We find this attitude repeatedly emphasized in many cases. Illustrative of our duty in that regard is O'Donnell v. Breck, 7 Pa. Superior Ct. 24, where Judge Orlady said (p. 27):

"It is difficult to determine just when the relation between an attorney at law and the person acting on his advice is not a confidential one. The esteem in which attorneys at law are held is founded upon the reputation of the profession for learning and integrity, and the uniform confidence in the advice or suggestions given by them to those requiring their aid, is the highest encomium of the profession.

"The courts have carefully refrained from defining the particular instances of a fiduciary relation in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which there is confidence reposed on the one side, and the resulting superiority and influence on the other. The relation, and the duties involved in it, need not be legal;

it may be moral, social, domestic or merely personal: 2 Pomeroy's Eq. Jur. secs. 955, 956; 1 Story's Eq. Jur. secs. 212, 310, 311.

"There must be no misrepresentation, and no *concealment* or *suppression* [italics supplied] of any fact within the knowledge of the agent which might influence the principal, and the burden of establishing perfect fairness is on the agent. Greenfield's Estate, 14 Pa. 489, Henry v. Raiman, 25 Pa. 354, Shoemaker v. Stiles, 102 Pa. 549, Yardley v. Cuthbertson, 108 Pa. 395, Darlington's App., 86 Pa. 512, Worrall's App., 110 Pa. 349, Darlington's App., 147 Pa. 624, and Goodyear v. Brown, 155 Pa. 514, furnish striking illustrations of the jealous care which is shown by the law under the rule of public policy, in treating all cases as constructive frauds, when any confidential adviser seeks to secure undue advantages, bargains, or gratuities by availing himself of the good nature, liberality, credulity, or necessities of a person reposing trust and confidence in him." The learned jurist continued:

"The name given to the relation is not material. The law looks to the substance and not at its shadow. The effect which is produced upon the unduly or unfairly impelled person is the result which is prohibited. No trust shall be violated, no confidence misapplied, is the stern order of the law."

Nor is the obligation arising from the relationship of attorney and client restricted to the individual case or transaction which gave rise to the relationship, for as pointed out in 7 C. J. S. 959, §125:

"Once the relationship has been created, however, the duty of fairness, good faith, and fidelity is a continuing one which may extend beyond the continuance of the relationship itself, so long as the influence arising from the relationship exists".

So also the same authority, at page 964, states that while an attorney may be "under no absolute incapacity to deal with his client", nevertheless "because of

the confidential and fiduciary nature of the lawyer's relationship and his opportunities to exert undue influence over his client, the 'arm's length rule,' which permits the parties to an ordinary business or mercantile transaction to outtrade or outmaneuver the other and obtain an advantage at the expense of candor and ingeniousness [sic], is entirely inapplicable to business dealings or transactions between the attorney and his client after the employment has been undertaken. Rather, all such transactions or dealings are regarded with suspicion and disfavor, are discouraged by the policy of the law, and will be closely scrutinized by the courts which will lean against the attorney".

Furthermore, an attorney or agent may, as is the situation here, as a matter of fact occupy a confidential relationship to his principal in all matters. If he does, the burden is on the attorney to show that in every transaction between the principal and the agent the principal knew and understood all material facts: Maguire v. Wheeler et al., 300 Pa. 513; O'Donnell v. Breck, supra; Darlington's Estate, 147 Pa. 624; Matthaei v. Pownall, 235 Pa. 460.

Bearing these principles in mind let us now examine the facts of the case before us. Alexander was the attorney, confidential adviser, and agent of claimant; he was also the owner of the property, 1614 Summer Street. He was therefore in a dual capacity, but, as the law forbade him taking advantage of his client's interest, we must assume he did whatever was necessary to protect her rights. To make the situation clearer we point out that if Alexander had not been the owner of 1614 Summer Street, as a diligent attorney or agent he would on default have immediately given the requisite notice to the tenant to pay the rents to him as the mortgagee's attorney. As a court, which within the limits of its jurisdiction applies the rules and principles of equity, we may well assume that "that was done which ought to have been done" and that Alexander acting for the benefit of his client,

after the default, gave himself notice if necessary. Thereafter he received and held for the benefit of his client the rents to the extent necessary to discharge the arrearages of interest. This was his bounden duty which he could not escape. If, therefore, it was his duty to have done for his client as against himself, what he would have done had a third party been the owner, it follows the burden is on him or his personal representatives to produce evidence that his client with full knowledge of the facts and after a complete disclosure by him expressly waived the remedy he should have invoked for her. The stipulation does not say that there ever was such a disclosure or a waiver, and in absence of any such showing the court should assume that the rents received from the time of the default were received by decedent not in his capacity as owner but rather in his capacity as agent and attorney for the mortgagee. It follows, therefore, that his estate is accountable for the rents received to the extent necessary to pay the interest due on the mortgage.

The situation as here developed is not dissimilar to that in Weaver's Estate, 114 Pa. Superior Ct. 439, where an executor occupied a dual position as debtor to the estate of which he was fiduciary. The Superior Court in its opinion by Judge Cunningham said (page 442) :

"In his dual capacity he is both debtor and creditor with respect to the same obligation, and it is a familiar principle that when the hand which is to pay is the hand also to receive, that is payment in law: Grayble v. York & Gettysburg Turnpike Co., 10 S. & R. 269, 272; Linsenbigler v. Gourley, 56 Pa. 166, 171. An executor cannot sue himself in his individual capacity, and therefore, as executor, he is chargeable with all moneys that he owes himself in the latter capacity. Hence appellant's acceptance of the appointment as his creditor's executor operated as payment of the debt into his own hands, and it was thereafter his duty as executor to inventory this debt and account for it as assets of the estate".

We may regard the situation here as parallel. In ·Persch v. Quiggle, 57 Pa. 247, 263, it was said that an agent cannot deal with his principal as he might deal with a stranger, the confidential relation forbidding it. He cannot avail himself of an acquittance given by her in ignorance of the fact which it was his duty to communicate. She had confided in him and it was his duty to be faithful. An agent can derive no advantage from anything that his principal did in ignorance of what it was his duty to communicate. We need not put the case upon fraud but upon breach of trust.

From the stipulation it appears that the first default in interest was made on September 30, 1930, and was for $450 interest due. From that interest period the default continued, the interest being unpaid up until decedent's death, which was February 12, 1933. From September 30, 1930, to September 30, 1932, five semi-annual instalments of interest were due of $450 each, or a total of $2,250. To this extent the claim should be allowed as a general claim and claimant allowed to participate with the other creditors for the dividends available.

Counsel for Leonora Koecker included in her claim rents amounting to $1,440 collected *after* decedent's death by the executors from the same property (1614 Summer Street). These rents were improperly included in the account, for the executors were not authorized either by the will or by the court to collect the rents. They hold them, therefore, as agent for the parties entitled. See Judge Lamorelle's adjudication in Backenstoe's Estate, 2079 of 1928, citing Thord-Gray's Estate, 9 Erie 1. The learned auditing judge in the instant case correctly refused to make any award of the rents. We regard his refusal as equivalent to an order striking them from the account so that claimant is not prejudiced from pressing her claim against these rents in a proper tribunal. We content ourselves with the observation that the insolvency of the testator may have served to subject the rents in question to the lien of the mortgage on the property out

of which they issued; see Mertens' Estate, 18 D. & C. 310, Bausman's Appeal, 90 Pa. 178, and Wolf's Appeal, 106 Pa. 545, though we are not called upon to decide that question here.

The adjudication, the learned auditing judge consenting, is modified to the extent indicated in this opinion and as thus modified the exceptions are dismissed and adjudication confirmed absolutely.