# Matthaei, Appellant, *v.* Pownall.

*Equity—Setting aside deed—Confidential relation—Physician —Fraud—Responsive answer.*

1. The relation of a physician to his patient is one of trust and confidence, and while such relation does not per se forbid the acceptance of a gift or conveyance by him from his patient, the burden is on the physician to prove that such a gift or conveyance was fairly and honestly obtained, and that the transaction was above suspicion.

2. Where a conveyance of the greater part of the grantor's estate was made to one occupying a confidential relation towards him, it is not necessary that actual fraud should appear in order that the conveyance may be set aside.

3. In a suit in equity by the heirs of a deceased grantor against the grantee, a physician, to have the conveyance set aside, the evidence showed that the defendant was a near neighbor, friend and attending physician of the grantor who reposed great confidence in him. On the day before the grant the defendant wrote to the grantee who lived in a boarding house kept by a woman over eighty years of age and several miles from his relatives, deprecating a sale of a hundred acre farm which was four-fifths of the grantor's whole estate and worth about $8,000. In this letter the grantee conveyed to the grantor's mind a value of the farm much below its real worth, and promised that if the farm was deeded to the grantee that he would not only pay the sum of $400 per year, but would obligate himself not to dispose of the property until the grantor was satisfied that he would be secure in his income, and that he would give the latter free professional services, and cheerfully administer to his wants and comforts during life. The written contract accompanying the deed and executed by the grantor did not contain the last two stipulations, and the grantee did not explain their omission. Nor did it appear that the grantee had been advised of his rights, or that the deed and contract had been explained to him, or that it had been suggested to him that he should have the counsel of an attorney. The evidence was sufficient to sustain the grantor's mental capacity to understand what he was doing, and it also appeared that he had offered the farm to others on practically the same conditions that he had conveyed it to the defendant. *Held*, (1) that the undisputed facts constituted a constructive fraud, which the defendant had failed

to overcome by any sufficient evidence; and (2) that a decree should have been entered setting aside the conveyance.

4. The rule that a responsive answer must be overcome by two witnesses, etc., has no application to a case in which the denial goes only to the legal effect of the essential facts and not to their existence.

Argued Feb. 7, 1912. Appeal, No. 18, Jan. T., 1912, by plaintiff from decree of C. P. Bucks Co., Oct. T., 1910, No. 3, on bill in equity in case of John B. Matthaei et al. v. Elmer E. Pownall. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Bill in equity to set aside a deed. Before STAPLES, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

*Error assigned,* amongst others, was decree dismissing the bill.

*Owen J. Roberts,* with him *Isaac J. Vanartsdalen,* for appellant.—The burden is upon the defendant to prove the righteousness of the bargain: Unruh v. Lukens, 166 Pa. 324; Adam's Est., 220 Pa. 531; Miskey's App., 107 Pa. 611; Worrall's App., 110 Pa. 349; Armor's Est., 154 Pa. 517; Wilson v. Mitchell, 101 Pa. 495; Stepp v. Frampton, 179 Pa. 284.

The consideration was inadequate: Springer's App. 111 Pa. 228; Tetlow v. Rust, 227 Pa. 292.

Similar offers made by Matthaei to other parties do not justify this transaction.

Defendant did not refer Matthei to counsel or business adviser: Darlington's Estate, 147 Pa. 624; Sarver v. Sarver, 230 Pa. 60.

The rule requiring two witnesses to overcome the answer does not apply in this case.

*Harman Yerkes,* with him *Henry A. James,* for appellee.—This court, by a long series of decisions, has

held that the findings of a court of equity under the
new equity rules, like the findings of a master under the
old practice will not be set aside on appeal if they ap-
pear to have been warranted by the evidence, or if there
is sufficient evidence to sustain them: Hale & Kilburn
Manufacturing Co. v. Norcross, 199 Pa. 283; Steinmeyer
v. Seibert, 190 Pa. 471; Barlott v. Forney, 187 Pa. 301;
Stockett v. Ryan, 176 Pa. 71.

The presumption is in favor of the validity of the
deed and the evidence to overcome it does not appear
either through the witnesses or the findings of the court:
Crothers v. Crothers, 149 Pa. 201; Audenreid's App., 89
Pa. 114; Real Est. Title Ins. & Trust Co. v. Maguire, 17
Montgomery County 25; Eckert v. Flowry, 43 Pa. 46;
Doran v. McConlogue, 150 Pa. 98; Krider v. Krider, 17
Montgomery County 9; Campbell v. Brown, 183 Pa. 112.


OPINION BY MR. JUSTICE MOSCHZISKER, March 18,
1912:

On December 27, 1906, Charles Matthaei, a man sev-
enty-six years old, conveyed in fee-simple to the defend-
ant, Dr. Pownall, who had been for some time his at-
tending physician and medical adviser, a 100-acre farm,
which the court found was then worth seven to eight
thousand dollars. The consideration mentioned in the
deed was seventy-five hundred dollars, but no part of
that sum was paid or intended to be paid by the grantee,
—the actual consideration being a contemporaneous
written contract whereby the grantee agreed to pay
Matthaei $400 a year in quarterly payments during the
remainder of his life. On December 26, 1906, Dr.
Pownall wrote a letter to Matthaei in which he referred
to the difficulty of getting farm-work done, and stated
that he had been informed the farm in question would
not bring over $40 or $50 an acre, and that he thought
there was little prospect of getting $80 an acre; he re-
minded Matthaei that in an effort to sell he would be put
to the expense of advertising, and even if he was success-

ful, that he would have the risk of investing the proceeds. Dr. Pownall makes a passing reference in the letter to what he terms an agreeable offer made by Matthaei to him, adding, "I am willing to accept your offer by obligating myself, my heirs and assigns, to pay you $100 every 3 months as long as you live and not to sell the farm until I have satisfied you that you will be secured in your income. I will also promise to give you free professional care so long as you are within the limits of my practice, and will cheerfully administer to your wants and comforts.... If you need extra money I will feel obligated to give it...... If you think favorably of the proposition, let us get it fixed up promptly......" The next day Dr. Pownall brought the deed and contract to his patient and they were duly executed. Shortly after this the defendant rented the property for $525 per annum, and in February, 1908, he sold it for $8,118; of this, $6,500 remained on mortgage and the balance was paid in cash. On November 4, 1908, Matthaei died, leaving to survive him as his heirs certain brothers, sisters, and children of deceased sisters. These heirs filed the present bill against Dr. Pownall upon the theory that the conveyance had been secured by fraud, praying that the mortgage held by him should be assigned to them and that he should be decreed to account for the cash consideration paid him in the sale of the property, and for all income therefrom.

The letter from Dr. Pownall to Matthaei speaks for itself, and the answer filed admits the other actual facts essential to the plaintiff's case; in it the defendant frankly states that "it may have been true that Matthaei spoke to me in relation to disposing of said farm for the reason that I was his physician and friend and he had confidence in me;" but he denies that Matthaei was at all enfeebled in mind or body, or that he had been influenced, deceived or defrauded in any way or manner whatsoever into the execution of the conveyance in question. When the case came on for hearing the chancellor

found the material facts as we have stated them, but he further found that Matthaei had sufficient mental capacity to understand what he was doing, that he had offered the farm to others on practically the same conditions that he had conveyed it to the defendant, and that in making the conveyance he acted on his own desires.

The court below correctly concluded that the defendant, by reason of his position of attending physician occupied a confidential relation toward Matthaei, which was strengthened by "the close personal relationship between the two men;" that Dr. Pownall "in his letter of December 26, 1906, assumed a high moral ground that would naturally lead Matthaei to repose trust and confidence in the defendant's fairness and desire to do right;" that the parties by reason of their confidential relationship "did not deal at arm's length;" that the consideration paid for the property was "wholly inadequate inasmuch as it represented only 5 per cent. annually of the fair market value of the farm; and also in view of the old age of the said Matthaei and the certainty of his death within a short period;" that the confidential relationship between the parties and the inadequacy of consideration threw "the burden upon the defendant of showing that the agreement of December 27, 1906, was fair, conscionable and proper beyond a taint of suspicion of fraud, undue influence or overreaching on the part of the defendant;" and that the fact that Matthaei "may have offered his farm to other parties upon similar terms does not absolve the defendant from the duty of showing that this contract was fairly and properly entered into." After thus correctly stating the law, the learned court below reached the final conclusion that, since Matthaei was in possession of all his faculties and knew what he was doing, there was "no presumption from all the evidence in the case that would warrant a finding that the conveyance was obtained by fraud," stating, "We are averse to assenting to the proposition that because a man has been a friend of

the grantor for a number of years and acted in a professional capacity, that therefore it must be assumed that he exercised undue influence upon the grantor to obtain a grant of land," and dismissed the bill; in this there was error.

Before we refer to the controlling principles of law, it is to be noted that the grant to Dr. Pownall involved four-fifths of Matthaei's entire estate; that the defendant was the near neighbor, close personal friend and attending physician of the grantor who reposed great confidence in him; that the day before the grant the defendant wrote to Matthaei, who lived in a boarding-house kept by a woman over eighty years of age and several miles from his relatives, deprecating a sale or attempt to sell his property, conveying to his mind a value much below its real worth, and promising, if the farm was deeded to him, Pownall, that he would not only pay the sum of $400 per year, but would obligate himself not to dispose of the property until Matthaei was satisfied that he would be secure in his income, and that he would give the latter free professional services and cheerfully administer to his wants and comforts during life. It is further to be noted that the contract, as actually executed, contained neither of the last two stipulations, but left the defendant free to dispose of the property and put the money in his pocket without any security to Matthaei whatever; that the defendant failed in his answer and proofs to give any explanation of these material omissions, to claim or show that Matthaei had understood or assented to the same, that he had been advised of his rights, that the papers as executed had been explained to him, or that it had been suggested to him in any manner that he should have the counsel of an attorney or other adviser in this transfer to his friend, neighbor and physician, of the greater part of his small estate.

30 Cyc. at page 1570, states, "the relation of the physician to his patient is one of trust and confidence,

and while such relation does not per se forbid the acceptance of a gift or conveyance by him from his patient, the burden is on the physician to prove that such gift or conveyance was fairly and honestly obtained and that the transaction was above suspicion." This is a correct statement of the law: Unruh v. Lukens, 166 Pa. 324. In Darlington's Estate, 147 Pa. 624, at page 629, we said that, "The confidential relation is not confined to any specific association of the parties to it...... It embraces......physician and patient, and generally, all persons who are in any relation of trust and confidence. When the relation exists the consequent duties and obligations are perfectly well established by long settled law;" at page 632, "A confidential adviser is not permitted to avail himself either of the necessities of his client or his good nature, liberality or credulity, to obtain undue...... bargains......;" and at page 633, the burden of establishing perfect fairness, adequacy and equity is thrown upon the confidential adviser and "if no such proof is established, courts of equity treat the case as one of constructive fraud."

In a case like the present, where a conveyance of the greater part of the grantor's estate was made to one occupying a confidential relation toward him, it is not necessary that actual fraud should appear. As early as 1850, in discussing this subject in Greenfield's Estate, 14 Pa. 489, at page 505, we said that the evidence did not "justify a charge of actual fraud...... But in spite of this concession, a rule of public policy and pure morals founded in long experience of the human heart and knowledge of man's cupidity, interposes....... The case represents what is called a constructive fraud, springing from the confidential relations existing between the parties. This peculiarity, withdrawing it from the operation of ordinary rules, throws upon the beneficiaries the duty of showing expressly that the arrangement was fair and conscientious, beyond the reach of suspicion. In requiring this, courts of equity act ir-

respective of any admixture of deceit, imposition, over-reaching or other positive fraud.  As it has often been said, the principle stands independently of such elements of active mischief.  It is founded upon a motive of general policy, and is designed to protect a party, so far as may be, against his own overweening confidence and self-delusion, the infirmities of a hasty judgment, and even the impulses of a too sanguine temperament." And in Miskey's Appeal, 107 Pa. 611, referring to the same general subject, at page 630, by quotation from a noted English case, we said that the question was not whether the grantor "knew what she was doing, had done or proposed to do, but how the intention was produced; whether all that care and providence was placed round her, as against those who advised her, which from their situation and relation with respect to her they were bound to exert on her behalf."

Applying these principles to the present case, the undisputed facts constitute a constructive fraud, which the defendant failed to overcome by any sufficient evidence. The fact that Matthaei had no mental weakness, and the further fact that he had suggested to others that he desired to get rid of his farm and was willing to part with it on some such terms as those contained in the contract between Dr. Pownall and himself, were not sufficient to meet the burden cast upon the defendant. That burden could only have been met by clearly showing that the value of the grantor's property and the inadequacy of the bargain he was making had been honestly brought home to him, or that he had been given the opportunity of independent advice; and in this particular case the departure in the contract as actually made from the terms suggested in the defendant's letter should have been explained, in order properly to sustain the bona fides of the transaction; none of these things was done, however.  On the contrary, it was shown that not even the witnesses to the documents knew their nature, and that the only attorney present was the one acting for

the defendant. As we said in Darlington's Estate, supra, at page 635, such transactions are not condemned because of mental incapacity on the part of the grantor or proof of actual fraud, but because of the absence of that full and satisfactory proof that the contract in question was the free and intelligent act of the party, fully explained to him, and done with a thorough knowledge of the bargain and all its consequences.

The rule that a responsive answer must be overcome by two witnesses, etc., has no application to a case like this where the denial goes only to the legal effect of the essential facts and not to their existence: Everhart's Appeal, 106 Pa. 349, 354. The burden was upon the defendant to explain fully the transaction complained of in such a manner as to demonstrate its bona fides; if Matthaei were alive to-day and were the complainant, on the record as presented it cannot be doubted that a chancellor would grant him the relief prayed for; the present complainants have the same right. While the defendant should pay the costs, he should be allowed all the moneys properly expended by him upon the property and the sum of the payments made to Matthaei under the contract.

It is not necessary specifically to pass upon all the assignments of error. The last two which go to the dismissal of the bill are sustained, the decree is reversed, the bill is reinstated, and the record is remitted to the court below with directions to enter a decree in accordance with the views expressed in this opinion.