# Corrigan, Executrix, *v.* Conway, Appellant.

*Trusts and trustees—Trustee ex maleficio—Fraud—Constructive fraud—Deed to person in confidential relation.*

1. Where a conveyance of the greater part of the grantor's estate is made to one occupying a confidential relation, it is not necessary to establish actual fraud as a ground for a reconveyance.

2. Where an illiterate woman, seventy-two years old, conveys, by a deed signed by her mark, all of her real estate, to a brother, fourteen years younger, who occupied to her a confidential business relation, the grantee will be compelled to reconvey, in the absence of full and satisfactory proof that the deed was the free and intelligent act of the grantor, fully explained to her, and done with a

thorough knowledge of the act and all its consequences; and this is so though no actual fraud was shown.

3. In such case if it appears that the brother provided liberally for the sister after the conveyance, he will be entitled to receive credit for the moneys which he may have expended upon the real estate, and the sums which he had paid to his sister, or for her benefit.

Argued January 19, 1921. Appeal, No. 197, Jan. T., 1921, by defendant, from decree of C. P. No. 5, Phila. Co., June T., 1914, No. 5019, on bill in equity, in case of Margaret Corrigan, executrix of Bridget Conway, v. James F. Conway. Before MOSCHZISKER, C. J., WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for reconveyance of real estate.

The opinion of the Supreme Court states the facts.

The court in an opinion by MARTIN, P. J., 27 Pa. Dist. R. 701, entered a decree for a reconveyance. Defendant appealed.

*Error assigned,* among others, was decree, quoting it.

*John P. Connelly,* with him *Ernest Lowengrund,* for appellant.—No confidential relation was shown between the original plaintiff and defendant, and no abuse of any such relation was made to appear. Plaintiff executed the deeds at her own instance and by her own suggestion. They were intended to be without consideration and for purposes of her own, and due disclosure of their nature was made: Davidson v. Little, 22 Pa. 245; Greenfield's Est., 14 Pa. 489; Campbell v. Brown, 183 Pa. 112; Frey's Est., 223 Pa. 61; Colonial Trust Co. v. Hoffstot, 219 Pa. 497; Crothers v. Crothers, 149 Pa. 201; Doran v. McConlogue, 150 Pa. 98.

*W. Horace Hepburn, Jr.,* with him *Barry H. Hepburn,* for appellee.—Where a fiduciary relation exists and the acting trustee procures a conveyance to himself

of all of the cestui que trust's property, he holds the same as trustee unless there is a full, fair explanation of the purposes to the contrary: Sarver v. Sarver, 230 Pa. 60; Matthaei v. Pownall, 235 Pa. 460; Miskey's App., 107 Pa. 611; Unruh v. Lukens, 166 Pa. 324; Morrish v. Morrish, 262 Pa. 192; Greenfield's Est., 14 Pa. 489; Thomas v. Herring, 244 Pa. 550; Darlington's Est., 147 Pa. 624.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 14, 1921:

Appellant complains of a decree in equity, ordering him to convey several pieces of real property, also to render an account and make certain payments.

The decree is affirmed on the following excerpts from the opinion of the learned president judge of the court below:

"Two deeds were executed by Bridget Conway, one dated October 8, 1907, and the other February 4, 1909; they conveyed to James F. Conway six houses and lots described therein. The grantor owned an undivided one-third interest in three of the properties, in which two-thirds belonged to defendant and his children; the other three properties belonged to the grantor in fee. She was seventy-seven years of age when the first deed was executed. James Conway, the grantee, was her brother; he was fourteen years her junior, transacted her business and for many years had been consulted about her affairs. The consideration mentioned in the deeds was one dollar; and the property conveyed was practically her entire estate.

"Prior to making the conveyance the grantor expressed to the wife of the grantee a wish to have the grantee take the properties, and stated that she would feel better satisfied if he had them in his name, because it would prevent some other persons raising trouble, as 'he was to have it at any rate'......She did not question the conveyances until four years after the date of the last deed.

"The deeds were prepared by a scrivener employed by the grantee; no money actually passed, nor was there an agreement to pay the grantor anything; she could not write, and both deeds were executed by her mark; they were duly acknowledged and recorded.

"The grantor continued to occupy one of the properties, in which she resided at the time of the conveyance, and lived there for the balance of her life, without paying rent; a tenant in another of the properties continued to pay the rent to the grantor after the conveyance, and the rent from the other properties included in the conveyances was collected by agents of the grantee. After deducting taxes, charges and repairs, part of this revenue was paid each month to the grantor, and the balance retained by the grantee, who supplied the grantor from time to time with household necessaries purchased and paid for by him. No account was demanded by the grantor, or rendered by the grantee......

"An amended bill was filed in which Bridget Conway alleged that the deeds were procured from her by undue influence, and executed without consideration; she prayed for an account, that the grantee be declared a trustee, and the deeds declared void. During the pendency of this proceeding the grantor died, leaving a will which was admitted to probate. Letters testamentary were granted to Margaret Corrigan, who, as executrix, was substituted as plaintiff......

"There is no evidence of deliberate or premeditated fraud, nor does it appear that the grantor was not of sound and disposing mind; but, if she could not properly understand the transaction without an explanation of the effect of the deeds on her future rights in the premises, it should have been given. She testified [in depositions introduced at the present trial] that no explanation was made to her; and, while there is evidence that the deeds were read to her, the details of what actually took place are meagre. The conclusion is warranted that the grantor at least believed the transfer to be tem-

porary and revocable. The deeds contain no clause of revocation; she was not informed that such a clause could or should be inserted, and no arrangement was made for her future support. She could neither read nor write, and swore that she did not know what she was signing......The grantor being without other means, her financial condition justifies an inference that she expected either a substantial consideration for the conveyances, or that the grantee would hold the properties in trust, manage them and pay her the net rents; she could not afford to make a gift of her entire estate to him."

After citing and quoting from Thomas v. Herring, 244 Pa. 550; Tetlow v. Rust, 227 Pa. 292, 294, and Story's Eq. Jur. 331, the opinion continues: "The party in whom 'confidence is placed is held to the strictest accountability; the burden is upon him to show that a transaction between himself and his principal, by which he derives benefit, was fair, conscientious [conscionable] and beyond the reach of suspicion. A confidential adviser is not permitted to avail himself either of the necessities of his client or his good nature, liberality or credulity, to obtain undue......bargains......The burden of establishing perfect fairness, adequacy and equity is thrown upon the confidential adviser, and, if no such proof is established, courts of equity treat the case as one of constructive fraud; the rule is founded upon motives of general policy......There must be full and clear proof that the transaction was the free and intelligent act of the party, fully explained, and performed with a thorough understanding of the transaction and of its consequences': Darlington's Est., 147 Pa. 624, 625.

"Where a conveyance of the greater part of the grantor's estate was made to one occupying a confidential relation, it has been held not necessary that actual fraud should appear. As early as 1850, in discussing this subject in Greenfield's Est., 14 Pa. 489, at page 505, [our

Supreme Court] said that the evidence did not justify a charge of actual fraud......; but, 'in spite of this concession, a rule of public policy and pure morals, founded in long experience of the human heart and knowledge of man's cupidity, interposes......The case presents what is called a constructive fraud, springing from the confidential relations existing between the parties; this peculiarity, withdrawing it from the operation of ordinary rules, throws upon the beneficiaries the duty of showing expressly that the arrangement was fair and conscientious [conscionable] beyond the reach of suspicion. In requiring this, courts of equity act irrespective of any admixture of deceit, imposition, overreaching or other positive fraud. As it has often been said, the principal stands independently of such elements of active mischief; it is founded upon a motive of general policy, and is designed to protect a party, so far as may be, against his own overweening confidence and self-delusion, the infirmities of a hasty judgment, and even the impulses of a too sanguine temperament.'

" 'In Miskey's Appeal, 107 Pa. 611, referring to the same general subject, at page 630, by quotation from a noted English case, [our Supreme Court] said that the question was not whether the grantor knew "what she was doing, had done or proposed to do, but how the intention was produced; whether all that care and providence was placed round her, as against those who advised her, which from their situation and relation with respect to her they were bound to exert on her behalf." Applying these principles to the present case, the undisputed facts constitute a constructive fraud, which the defendant failed to overcome by any sufficient evidence......Such transactions are not condemned because of mental incapacity on the part of the grantor or proof of actual fraud, but because of the absence of that full and satisfactory proof that the contract in question was the free and intelligent act of the party, fully explained to him, and done with a thorough knowledge

of the bargain and all its consequences': Matthaei v. Pownall, 235 Pa. 460, 467-8."

Then, speaking of the case in hand, the court below states: "There is no evidence of actual fraud on the part of the defendant......; the circumstances and relationship of the parties lead to the conclusion that there was an implied understanding that the grantee should manage the properties for the grantor, to relieve her of care ......; he provided liberally for his sister, took care of her before the conveyance, and continued to do so after the execution and delivery of the deeds; he should be allowed credit for all money expended by him upon the properties, and for sums paid to Bridget Conway or for her benefit (Matthaei v. Pownall, supra, 235 Pa. 460, 468). Upon payment in full of the amount found to be due him, a decree may be entered directing a reconveyance of the interest in the properties to which Bridget Conway was entitled, to the parties in interest under the terms of her will."

The earnest argument of counsel for defendant, which we have carefully considered, has not convinced us that the evidence relied on fell short of that required in any material regard; we see no error in the final disposition made of this case by the court below.

The decree is affirmed at cost of appellant.