## Boyd et al., Appellants, *v.* Kilmer.

*Deed—Undue influence — Confidential relation — Attorney and client—Privileged communications.*

1. Where a man makes a deed of real estate to a neighbor and friend who has taken him into his house to care for him, and with whom he has no business connection, the grantee does not occupy such a confidential relation as will throw upon him the burden of showing that the conveyance was fairly and honestly obtained.

2. Even if a confidential relation existed in such case, the burden would be met by showing that, although the deed was made in consideration of paying a small debt and of future care and support, and although the grantee lived only one month afterwards, he had made the deed with full knowledge from his physician that he had only a short time to live, that he made it against the advice of his attorney, with full knowledge of the smallness of the consideration, and with an expressed desire to cut off his daughters who had refused to care for him.

3. In such case testator's attorney was competent to testify in favor of defendant in an equity suit brought by the daughters against the grantee to set aside the deed.

4. An attorney may testify in favor of his client, after the death of the latter, in support of a deed executed by him.

5. Relatives of the deceased client who were not parties to the transaction in which the attorney acted, cannot claim that the communications were privileged.

6. The right to claim that the communications were privileged was purely personal and did not pass after the client's death to his relatives, and this is specially so if it appears that their interests were antagonistic to him and against his deed.

Argued January 26, 1926. Appeal, No. 24, Jan. T., 1926, by plaintiffs, from decree of C. P. Bucks Co., Oct. T., 1913, No. 3, dismissing bill in equity, in case of Mary Boyd et al. v. Albert K. Kilmer. Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Affirmed.

Bill in equity to cancel deed. Before RYAN, P. J.
Bill dismissed. Plaintiffs appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Webster Grim,* with him *Harry E. Grim,* for appellants.—Inadequacy of consideration is in itself presumptive evidence of fraud: Worrall's App., 110 Pa. 349; Greenfield's Est., 14 Pa. 489; Corrigan v. Conway, 269 Pa. 373; Hetrick's App., 58 Pa. 477; Stepp v. Frampton, 179 Pa. 284.

A confidential relation established, the case is withdrawn from the operation of the ordinary rules of construction: Matthaei v. Pownall, 235 Pa. 460.

Mr. Ross's testimony should have been excluded: Hill's Est., 9 Phila. 355; Bennett's Est., 8 W. N. C. 287; Miller v. Weeks, 22 Pa. 92.

*Harman Yerkes,* with him *Geo. Ross* and *Thos. Ross,* for appellees.—The attorney's evidence was admissible: Frear v. Drinker, 8 Pa. 520.

Appellants had no standing to object to his testimony and the fact that his client was dead did not alter the

situation: Dowie's Est., 135 Pa. 210; Padelford's Est., 190 Pa. 35.

The conveyance to appellee, Kilmer, has withstood every questioning test, and is shown to be the considered, intelligent act of an owner in the exercise of his power to dispose of his property as he wills and was in strict accord with his determination and directions, and is valid: Darlington's Est., 147 Pa. 624.

OPINION BY MR. JUSTICE FRAZER, March 15, 1926:

Andrew S. Boyd died June 20, 1911, intestate, leaving to survive him two daughters, the plaintiffs, who were his sole heirs. He left no property of any description, having, on May 25, 1911, less than a month previous to his death, conveyed to Albert K. Kilmer, defendant, his entire property consisting of a farm of 50 acres worth about $4,500, and personal property of little value, in consideration of the sum of $265 "and other good and lawful considerations." At the time of executing the deed, an agreement was entered into between Boyd and Kilmer wherein it was recited that the consideration for the conveyance and transfer of the property referred to was the promise on the part of Kilmer to pay a debt owed by Boyd to a third person amounting to $265 and furnish Boyd during the remainder of his life with a good home, to board, clothe, feed, nurse and care for him, pay his doctor bills and expenses and furnish him with such money as he might require from time to time. Kilmer, at the same time executed and delivered to Boyd a judgment bond in the sum of $2,000, to secure the performance of his agreement which obligation was entered of record and became a lien on obligor's real estate. Boyd continued to live with Kilmer until his death, and the latter in all respects fulfilled his agreement. Subsequently decedent's daughters filed the present bill, asking that the deed to Kilmer be cancelled and the property turned over to them, alleging as a reason that Kilmer occupied a fiduciary and confidential rela-

tion toward Boyd, from whom he procured the deed by fraud and undue influence for a totally inadequate consideration. The court below dismissed the bill and plaintiffs appealed.

Boyd, a canal boatman by occupation had leased his farm to a tenant for an annual rental of $150 and payment by the tenant of the taxes assessed against the property. In 1904 Boyd secured a divorce from his wife, who subsequently remarried, and their two daughters, the plaintiffs, went to live with an aunt, their mother's sister. He visited them occasionally, supplying them from time to time with small amounts of money. In 1907, Boyd developed tuberculosis and spent practically six months at a sanitarium, after which he resumed his occupation as a boatman. Part of the time he lived on his boat and part of the time boarded with the tenant on his farm. Defendant, a friend of Boyd's for forty years, lived with his sister on an adjoining farm. Boyd frequently visited them and Miss Kilmer at odd times did sewing for him. Boyd was taken to the Kilmer home May 10, 1911, and remained with them until his death. He went of his own accord, without formal invitation, and without fixing the length of his intended stay. Kilmer took him into his home and during his stay there both daughters visited him on May 16th. While at dinner on that occasion, in response to a question by one daughter in the presence of the other as to why he had come to Kilmer's they were informed by their father that, needing help, he had written to them, and as they refused to aid him, he was obliged to come where he could get the care he required. Miss Kilmer suggested to one of the daughters she should take care of her father, to which she replied "she would not and could not take care of him." The daughter just referred to requested that Boyd give her his papers, etc., saying she would settle his affairs when he was gone, to which he replied he was "not dead yet," that she would never get the papers and "I have fixed things so as to serve you

both alike." Shortly after the visit of the two daughters to Kilmer's, Boyd offered to convey to Kilmer his farm in consideration of the latter furnishing him a home, nursing and care, and paying his funeral expenses. A few days later, Kilmer accepted Boyd's offer and the latter requested Kilmer to see an attorney at Doylestown, a highly respected member of that Bar, whom he named, to have the necessary papers prepared for transfer of the property in accordance with their understanding. Defendant did so, and at the time fixed for meeting of the parties, at the request of the attorney, two physicians and two other persons, all of whom had known Boyd for a number of years, were present. Kilmer was present at the place of meeting but did not remain in the room while the preliminary discussion took place. After Boyd had informed the attorney of his intention and requested that the matter be put in legal shape, the attorney suggested he should make provision for his daughters. This, however, Boyd refused to do, saying if he did so his wife's relatives would get the money, and he did not intend they should have any of his estate. Boyd was told by the physicians he would probably live but a short time and that the consideration he would receive from Kilmer for his property would be extremely inadequate. Boyd, however, insisted upon having the conveyance made as directed and in accordance with this instruction the attorney prepared the deed, agreement and bond referred to. Both physicians who were present testified Boyd was of sound mind, able to transact business and was well aware of what he was doing.

Plaintiffs claim there existed between Boyd and Kilmer a confidential relation which imposed upon Kilmer the burden of showing the conveyance was fairly and honestly obtained, and the transaction above suspicion. No business connection existed between them, and Kilmer did not, in any way, assume the rôle of confidential advisor toward Boyd. He was merely a neighbor and friend, and took Boyd into his home because asked to do

so and as a neighborly act of friendship. Assuming,
however, a confidential relation existed, the burden of
showing the transaction was entered into in good faith
and without fraud, was fully met. The witnesses, in-
cluding the attorney, present at the time the deed was
executed, except one since deceased, all agree the plan
originated with and was carried out at the express in-
stance and request of Boyd, and against the advice of
his attorney. We recognize the rule as stated in Dar-
lington's Est., 147 Pa. 624; Matthaei v. Pownall, 235
Pa. 460, and Corrigan v. Conway, 269 Pa. 373, that
where a conveyance of the greater part of the grantor's
estate is made to one occupying a confidential relation
it is not necessary to establish actual fraud as a ground
for reconveyance, in absence of express proof on part
of grantor that the transaction was fair and equitable,
a court of equity will treat the case as one of construc-
tive fraud, and the only way to establish the fairness of
the transaction is by grantee clearly showing the value
of grantor's property, that the inadequacy of the con-
sideration had been called to his attention and that he
received the benefit of intelligent advice. In Matthaei v.
Pownall, supra, the conveyance was set aside because
the undisputed facts constituted constructive fraud,
which defendant failed to overcome; there the deed was
made by a patient to his physician, under an agreement
by grantee to pay $400 annually and not dispose of the
property until grantor was assured of the income to be
paid him in consideration of the conveyance, and further
that grantee would also provide grantor free profes-
sional service during his life; these last two stipulations
were not incorporated in the conveyance, consequently
grantee was free to dispose of the property. Further-
more, grantor did not have the benefit of legal advice,
there being but one attorney present and he representing
and acting for grantee. In Corrigan v. Conway, supra,
the conveyance was cancelled where an illiterate
woman conveyed her entire estate to a younger brother

who actually occupied toward her a confidential business relation, and there was no proof tending to establish the deed to be the free and intelligent act of grantor or that it had been explained to her before being executed. In the present case the deed was prepared at the express request of grantor by his own attorney, and it clearly appeared the attorney fully advised grantor as to the effect of the conveyance, even remonstrating with him, reminding him that the consideration was inadequate, and suggesting that at least part of the property be left to grantor's daughters. Notwithstanding his advice, deceased announced his determination not to leave any portion of his property to his daughters. All this was expressly incorporated in the agreement which recited grantor was of sound mind and determined that neither his former wife's family nor his two daughters should have any part of his estate; that the attorney had suggested the inadequacy of the consideration and advised that a portion of the property be given his daughters, but, notwithstanding this advice, he was "determined not to give them anything." Under the circumstances we think grantee fully met every burden the law imposed upon him.

Objection was made to the admission of testimony of Boyd's attorney, on the ground that he was disclosing confidential communications from his client, since deceased. Under the circumstances of this case that objection cannot be sustained. An attorney may testify in favor of his client (Follansbee v. Walker, 72 Pa. 228; Dowie's Est., 135 Pa. 210; Padelford's Est., 190 Pa. 35, 44), and as the testimony of the attorney was in support of the deed executed by his client, it was properly admitted. Furthermore, plaintiffs were not in a position to object to the testimony. They were not parties to the transaction between Boyd and Kilmer, and accordingly without right to claim the communications privileged; that right being purely personal does not pass to a third party at the client's death: Dowie's Est., supra; Padel-

ford's Est., supra.  Neither do plaintiffs stand in the place of their deceased father, and represent his interest as claimed by them.  Their claims are antagonistic to decedent, being as heirs and against the deed of conveyance.  In such case their interests are adverse to their father (King v. Humphreys,. 138 Pa. 310; Baldwin v. Stier, 191 Pa. 432) and they do not represent him.

Exception was also taken to the refusal of the court to admit evidence that Boyd did not realize he was suffering from tuberculosis in its final stage and that defendant did not know Boyd's real condition.  Boyd was advised, however, he would live but a short time, and whether he believed his ailment to be tuberculosis or a disease of a different character makes little difference.  The rejected evidence if received, would have affected mainly the question of consideration, because, if defendant was aware that Boyd had but a short time to live, the amount of service he would be called upon to render would be of a trifling character.  The court below expressly found the consideration to be "grossly inadequate," and the evidence of what took place at the time the deed was drawn and signed indicated that Boyd was more concerned with preventing his daughters and his former wife's relatives from coming into possession of the property than with the amount of the consideration Kilmer would receive.  The exclusion of the evidence consequently did not harm plaintiffs.

The decree of the court below is affirmed at appellant's costs.