## Bell's Estate (No. 1).

*Executors and administrators—Surcharge—Assets—Evidence.*

An administrator is only answerable for such assets of the estate as actually come into his possession, or which in the discharge of his duty he is bound to secure; and debts and real estate are not properly chargeable to an administrator.

Argued Oct 29, 1909. Appeal, No. 97, Oct. T., 1909, by James McF. Carpenter and W. B. Secrist, executors of James M. Bell, deceased, from decree of O. C. Allegheny Co., Sept. T., 1908, No. 42, dismissing exceptions to adjudication in Estate of Thompson Bell, deceased. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication.
The opinion of the Supreme Court states the case.

*Error assigned* was in dismissing exceptions to adjudication.

*J. McF. Carpenter,* with him *George N. Chalfant* and *William B. Secrist,* for appellants.

*C. C. Dickey,* with him *W. K. Shiras,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 10, 1910:

The appellants in this case urge that the court below erred in its conclusions on the facts. Our duty is therefore limited to determining whether there was evidence sufficient to sustain the items of surcharge to which exception has been taken. As set forth in the second assignment of error these items of surcharge are:

*a.* To the debit $17,235.34 same being composed of three items, to wit: balance Western Bank $2,235.34; payment to Fleming Brothers, November 26, 1889, $10,000; payment made to James M. Bell, January 28, 1892, $5,000.

*b.* To the charge of $20,000 for Stowe township lots.

*c.* To the charge of $28,483.78 interest.

*d.* To the surcharge of $6,000 for Colorado bonds.

Taking up these items in detail, and referring to the evidence adduced in support of each item of surcharge, it appears that the first item of $2,235.34 is the result of a statement prepared by the bookkeeper and printed in connection with the account, of the assets and liabilities of the so-called Western Bank. This was only a name by which the decedent, Thompson Bell, chose to do business. The statement represented, therefore, the assets and liabilities of Thompson Bell, and as the statement stands, the liabilities exceed the assets. Why the liabilities or debts of Thompson Bell should be charged to his administrator is not apparent. Such of his assets as actually came into the hands of the administrator were of course properly chargeable to him. But among the list of assets appears certain real estate marked Stowe township lots, and this real estate would not seem to be properly chargeable to an administrator. However correct this statement of the condition of Thompson Bell as a private banker may have been from the theoretical standpoint of a bookkeeper, it does not seem to be a proper basis upon which to charge his administrator, who is only answerable for such assets of the estate as actually come into his possession, or which in the discharge of his duty he is bound to secure.

Thompson Bell died September 7, 1886. There is no date attached to the statement of the condition of the Western Bank, filed by Mr. Cree, the bookkeeper, but presumably it shows the condition of his banking business, as it was at the death of Thompson Bell, some ten years prior to the beginning of the administration covered by the account filed in this case. We can find nothing in the evidence to justify the injection into this account of this statement of the condition of the so-called Western Bank, which as a matter of fact

means simply the condition of that portion of the business of Thompson Bell at the date of his death. It would not necessarily follow that the assets called for by the books at the time of testator's death, were actually on hand, or could be secured by the administrator and converted into cash at their book value. Evidence as to the facts should have been given or an inventory produced and filed. The exception to this item of surcharge, $2,235.34, is therefore sustained.

The second item of surcharge, to which exception was taken, the loan of $10,000 to Fleming Brothers, was stricken out of the final decree by the court below.

With regard to the next item, being for a payment apparently made by James M. Bell of $5,000 to himself, the books show the entry, and show no consideration therefor, so that we cannot say that there was no evidence to support this surcharge. The specification alleging error in this respect is therefore dismissed.

With regard to the item of surcharge of $20,000 for the proceeds of Stowe township lots, the evidence is so confusing that we are unable to say from our examination of the record, whether or not it supports the surcharge. It apparently does not. Mr. Cree, the bookkeeper, when asked with reference to the Stowe township lots, whether the estate of James M. Bell was chargeable with $20,000, or is chargeable with $1,000, testified: "If you lose entire sight of the credit of the bookkeeping and take the actual facts, the estate of James M. Bell is chargeable with $1,000. As the books stand he should be charged with $20,000, and given credit for $19,000." Turning again to the account, we find that the administrator has been charged with this $20,000, but we fail to find any corresponding item of credit for the $19,000 to which as the bookkeeper said, he was entitled, unless we include within the account the item of real estate, being the Stowe township lots, set out among the assets of the so-called Western Bank. This statement of the condition of the banking business, in our opinion, as we said above, has no proper place in connection with this account. This item of $19,000 of a difference, is too large to be permitted to stand upon any such uncertain

testimony as this. Unless it clearly appears that the credit has been given under some head which is not apparent upon examination, this item of surcharge should be reduced by that amount. The transaction seems to have been treated as a mere matter of bookkeeping, but if the fund resulted from the actual sale of real estate, how did it get into the hands of the administrator?

With regard to the surcharge of $6,000 for Colorado bonds, the transaction as described by the witness Mr. Cree, appears to be substantially that Mr. Bell took the bonds from the estate on account of his distributive share. Afterwards he undertook to charge them back to the estate, and credit himself with the purchase price; but did not return the bonds. They turned out to be worthless. Appellee excepted to this item of credit, and no evidence was offered to sustain it, so it was properly disallowed. Appellants do not attempt in their argument to sustain their exception to this item.

The amount of the surcharge of interest on funds due from the estate of James M. Bell, must of course be modified in accordance with the actual amount of the funds which may finally be found to have been in his hands, and due and payable to the estate of Thompson Bell, deceased.

We think the account should be restated, so as to show clearly and definitely the assets which actually came into the hands of James M. Bell as administrator d. b. n. c. t. a. of the estate of Thompson Bell, deceased, or which, in the proper discharge of his duty, he should have collected.

The decree of the orphans' court is reversed and the record is remitted for further proceedings.