## Williams's Estate.

*Wills—Devise to wife—Life estate—Power to consume.*

1. Where a testator gives and devises to his wife all of his real and personal estate "for her own use and benefit forever, to use and dispose of as she sees fit," and appoints her executrix, and at her death appoints another person as executor "to make final division" among certain persons mentioned, the wife has the right to use all of the personalty absolutely, and to convey the real estate and consume it all, if she sees fit, for her own proper maintenance and support.

2. In such case, after the death of the widow, the substituted executor who has taken out letters *d. b. n. c. t. a.* is chargeable only with such assets of the husband's estate as actually came into his hands, and is not liable or responsible in any manner for expenditures made by the widow during her lifetime, even if the same were irregular.

3. If the widow in her lifetime has assigned to the person named as executor all of the remainder of her husband's estate not consumed by her, such assignment is invalid as against the remainderman mentioned in the husband's will.

4. If such executor occupied a confidential relation to the widow, and he abused the confidence reposed in him by securing an assignment which covered the remainder of the husband's estate, such assignment is invalid.

Exceptions to auditor's report. O. C. Centre Co., No. 9991.

*M. Ward Fleming,* for exceptions.

*George W. Zeigler* and *E. J. Thompson,* for accountant.

KELLER, P. J., Jan. 10, 1927.—This matter comes before the court upon exceptions filed by C. L. Williams, a brother of the decedent, and claiming to be a legatee under the latter's will, to the report of John G. Love, Esq., auditor appointed by this court to pass upon the exceptions previously filed by him to the first and final account of Dr. C. V. L. Diener, executor or administrator *d. b. n. c. t. a.* of, etc., of said decedent, and to report his find-

Williams's Estate.

ings of fact and conclusions of law, together with a schedule of distribution of such balance as might appear to be properly remaining, to the court. Said auditor's report was presented to the court May 20, 1925, and confirmed *nisi*, and the time for filing exceptions thereto having been extended to June 16, 1925, by the court, on June 13, 1925, these exceptions were filed by the said C. L. Williams, and on June 15, 1925, were dismissed by the auditor.

Certain "findings of fact" which, *inter alia*, were found by the auditor, and, in our opinion, were justified by the testimony given and evidence adduced before him, are adopted by the court as pertinent to the present issue, together with such modifications thereof and additions thereto as are deemed relevant, and, as thus modified and added to, are found by the court as material.

*Facts.*

1. W. R. Williams died testate July 24, 1920, leaving a will duly probated in the Register's Office of Centre County, Pennsylvania, on Aug. 14, 1920, which will is recorded in Will Book "H," page 119.

2. William R. Williams was survived by Margaret Williams, widow, and C. L. Williams, brother, as well as by the other legatees mentioned in his will.

3. The material provisions of the will are as follows:

"I give, devise and bequeath all my real estate, and all my personal estate, whatsoever and wheresoever, unto my wife, Margaret A. Williams, for her own use and benefit forever, to use and dispose of as she sees fit. And I appoint my said wife executrix of this my last will. At her death I appoint Dr. C. V. L. Diener executor to make the final division hereby revoking all other wills made by me at any time heretofor.

"At the death of my wife I will and direct that all my just debts be paid and the following division of the estate be made: First, I will and bequeath my niece, Frances E. Williams, one hundred ($100.00) dollars, and my share of my mother's estate at her death as it may appear. Second, I will and bequeath to my brother, C. L. Williams, one-half (½) the balance of my estate. Third, I will and bequeath to my niece, Lillie B. Deaner, two-third (⅔) of the balance of what remains. Fourth, I will and bequeath to my niece, Carrie M. Miller, the remaining one-third (⅓), all to dispose of and use as they see fit."

4. Letters testamentary were issued Aug. 14, 1920, to Margaret A. Williams.

5. Margaret A. Williams, executrix, died Sept. 6, 1922, without having completed the administration of her husband's estate or filed any account thereof, although she had paid at least some of his debts.

6. Letters testamentary or of administration *d. b. n. c. t. a.* upon the estate of W. R. Williams were issued to C. V. L. Diener June 19, 1923, upon petition filed.

7. On Aug. 15, 1923, inventory and appraisement was filed showing personal estate amounting to $6714.19. $6000 of this amount was "cash received from sale of residence," sold April 29, 1921.

8. On Aug. 8, 1923, the first and final account of Dr. C. V. L. Diener, "executor *d. b. n. c. t. a.*," was filed, showing total assets of estate as $6714.19, total credits claimed $2853.73, and a balance due the estate of $3860.46. Said account is recorded in Account Docket "L," page 97.

9. Dr. C. V. L. Diener was present with Margaret A. Williams at the time letters testamentary were issued to her, knew the contents of the will, and felt his responsibility because of the provisions inserted appointing him executor after the death of Margaret A. Williams.

10. All funds of the estate of W. R. Williams were deposited in the personal account of C. V. L. Diener, from which the general and living expenses of C. V. L. Diener and wife were checked.

11. No account was kept nor were the funds of the estate of W. R. Williams marked other than in the mind of C. V. L. Diener.

12. While no money was paid by C. V. L. Diener from the estate funds without first being authorized by Margaret A. Williams, the testimony shows that C. V. L. Diener conducted all the business of administering the estate, and that there were few, if any, items paid by him before being talked over between him and Margaret A. Williams.

13. No contract was made by C. V. L. Diener and wife with W. R. Williams relative to the rental of the shop nor for the maintenance or care of W. R. Williams during his lifetime.

14. William R. Williams made various statements to the effect that C. V. L. Diener and wife would be paid, or well paid, for their services, as well as for the rental of the shop. These statements were apparently understood by the Dieners to be made by him in contemplation of a bequest to them in his will.

15. The items of "railroad fare and auto fare," "tombstone, etc., $500.00;" "Mrs. Miller, misc. 8/20/21, $61.70;" "drayage and crating, $20.00," and "expenses to Waterloo, four trips, and the sale, $100.00," contained in Dr. Diener's account as executor, etc., and payment of which was excepted to by C. L. Williams, were all for expenditures made in connection with the administration and settlement of the estate of the said W. R. Williams, deceased, during the lifetime of his widow, Margaret A. Williams, and upon her authorization.

16. The rent for the shop, amounting to $540, was paid to C. V. L. Diener by Margaret A. Williams shortly after the sale of the residence property.

17. Mrs. C. V. L. Diener boarded and rendered practical nursing services to William R. Williams, during his last illness, from April 1st to July 24, 1920, approximately 16½ weeks, for which she charged at the rate of $35 per week, or $577.50, on account of which she was paid $100, leaving a balance claimed to be still due of $477.50. This balance was paid to Mrs. Diener by Margaret A. Williams soon after the sale of the residence property.

18. According to Dr. Diener's testimony, the Dieners and also Mrs. Williams were very much disappointed with the terms of W. R. Williams's will. He stated that the understanding was that everything was to be willed to Mrs. Williams, and that at her death Mrs. Diener was to be the sole heir.

19. At the time of W. R. Williams's death, Mrs. Williams was about seventy years of age, and in the settlement of her husband's estate, by reason of her frailty and lack of business experience, relied very largely upon the advice and counsel of Dr. Diener, in whom she seemed to have implicit confidence and who handled all the moneys of the estate, proceeds of both personalty and realty, not only since Mrs. Williams's death, but during her lifetime as well.

20. In addition to the proceeds of personalty and realty appearing in the account of Dr. C. V. L. Diener as "Executor *d. b. n. c. t. a.*" of the estate of W. R. Williams, deceased, the said W. R. Williams carried life insurance to the approximate amount of $2400, all of which was payable to his wife, Margaret A. Williams, and was received by her after his death.

21. Margaret A. Williams, by agreement dated June 1, 1922, and recorded Sept. 26, 1922 (after her death), purported to assign, transfer and set over unto C. V. L. Diener and his wife all her estate, moneys and property of

whatsoever nature, owned by her or in her possession, in consideration that the Dieners would maintain and support her during the term of her natural life, and, at her death, bury her, and also *cancel all charges for maintenance and support of her late husband, prior to his death,* and of her, the said Margaret A. Williams, prior to the date of said agreement.

22. Margaret A. Williams lived about three months after the execution of the above-mentioned agreement with the Dieners, and a little more than two years and one month after her husband's decease; during at least one year of her widowhood she did not reside in Philipsburg.

23. According to Dr. Diener's testimony, practically all the money with which he charged himself in his account, being the money for the sale of the house, $6000, and the money from the sale of the piano, $300, and of the household goods, $361, came into his hands as executor or administrator *d. b. n. c. t. a.* of the estate of W. R. Williams, deceased. The balance shown due by said account, viz., $3860.46, was all proceeds of realty.

24. In his above-mentioned account as executor *d. b. n. c. t. a.,* Dr. Diener took credit for the payment of W. R. Williams's funeral expenses, $394.08; for the payment of the items mentioned in the 15th finding of fact; for the payment of rent of his shop by W. R. Williams, $540 (16th finding of fact), and for the payment of the balance claimed for boarding and nursing W. R. Williams during his last illness, $477.50 (17th finding of fact), as well as for the payment of various miscellaneous expenses, the total credits claimed aggregating $2853.73 (see 8th finding of fact). The credits claimed in said account did not include any credit for the payment of Mrs. Williams's funeral expenses.

## Discussion.

The exceptions filed to the account of Dr. C. V. L. Diener were all properly disposed of by the auditor. They were all exceptions to payments that had been made during the lifetime of Margaret A. Williams, widow of said decedent, either by her personally or by her express authority. The testator, in making provision for his widow, uses the following phraseology: "I give, devise and bequeath all my real estate and all my personal estate . . . unto my wife, Margaret A. Williams, for her own use and benefit forever, to use and dispose of she sees fit." If this bequest and devise as thus phrased stood alone in the will, Margaret A. Williams would have taken the personalty absolutely and a fee in the real estate: Barnitz *v.* Hydeman, 268 Pa. 216.

She certainly had the right to use all the personalty absolutely and to convey the real estate, and consume it all, if she saw fit, for her proper maintenance and support: Henninger *v.* Henninger, 202 Pa. 207; Kennedy *v.* Pittsburgh & L. E. R. R. Co., 216 Pa. 575; Allen *v.* Hirlinger, 219 Pa. 56; Rogers's Estate, 245 Pa. 206; Morel *v.* Oakley, 253 Pa. 107; Houser *v.* Houser, 268 Pa. 401; Benedict *v.* Hawthorn, 270 Pa. 529.

This being the case, what Mrs. Williams did with the personalty does not concern the exceptant or any one else; she could use and dispose of it as she saw fit, and Dr. Diener, as succeeding executor or administrator *d. b. n. c. t. a.,* was chargeable only with such assets of the decedent's estate as actually came into his hands, and was not liable or responsible in any manner for expenditures made by his predecessor, Mrs. Williams, during her lifetime, even if the same were irregular: Bell's Estate, 226 Pa. 531 and 535; Wagner's Estate, 227 Pa. 460.

The testator, however, evidently contemplated that there would remain a balance of his estate at his wife's death, for in his will he appointed Dr. Diener succeeding *executor to make the final division* of his estate, at her death.

and definitely directed just how such division should be made and who should be the beneficiaries, among whom were his brother, C. L. Williams, the exceptant here, and Lillie B. Diener, wife of Dr. C. V. L. Diener, the accountant (see 3rd finding of fact). And if it were the intention of his widow, Margaret A. Williams, to disregard and nullify the actual personal intent of her husband as expressed in his entire will, relative to the ultimate disposition and division of his estate after her death by the execution of the agreement or assignment between herself and Dr. Diener and his wife, hereinafter discussed, the law would not permit such action on her part: Tyson's Estate, Tyson's Appeal, 191 Pa. 218.

It would seem, moreover, from the actions of Dr. Diener, after the death of Mrs. Williams, that he recognized that a considerable portion of W. R. Williams's estate remained to be administered and divided, and that, as succeeding executor under said testator's will, he had certain duties to perform relative thereto. Accordingly, some considerable time after Mrs. Williams's death (more than nine months, in fact), he applied for, and had issued to him by the Register of Centre County, letters testamentary or of administration d. b. n. c. t. a. upon the estate of said W. R. Williams; several months later he filed an inventory and appraisement, as well as a first and final account in said estate, which are now before the court, upon exceptions filed thereto, and to the report of the auditor appointed to pass upon said exceptions. In fact, it seems that it was not until the matter came before the auditor, upon exceptions to his account, that Dr. Diener took the rather anomalous position that there was no estate of W. R. Williams when he took out letters thereon and filed his account as "Executor d. b. n. c. t. a." thereof, but that, immediately upon his death, his entire estate passed to and vested in his wife, Margaret A. Williams, who, by agreement dated June 1, 1922, but not recorded until after her death, had assigned, transferred and set over the same unto him and his wife, for certain considerations therein mentioned (see 21st finding of fact). Unfortunately for this position, Dr. Diener, in his account as "Executor d. b. n. c. t. a." of the estate of W. R. Williams, deceased, makes a specific charge against said estate, and takes credit therein for the payment to himself of $477.50, being for the "care and maintenance of W. R. Williams, April 1st to July 24, 1920," amounting to $577.50, upon which he admitted a previous credit due W. R. Williams of $100. This was in direct violation of the terms of the agreement or assignment under which he claims this estate; and a portion of the consideration therefor thus failing, it is a very serious question as to whether the entire agreement or assignment was not thereby abrogated and rendered void.

The uncontradicted testimony shows that Margaret A. Williams was about seventy years of age at the time of her husband's death in July, 1920, and consequently about seventy-two years old when said agreement with Dr. Diener was executed in June, 1922; that, in the settlement of her husband's estate, by reason of her frailty and lack of business experience, she relied very largely upon the advice and counsel of Dr. Diener, in whom she appeared to have implicit confidence; that Dr. Diener handled all the moneys of the estate of W. R. Williams, proceeds of both personalty and realty, not only since Mrs. Williams's death, but also during her lifetime, depositing said funds in his own personal bank account, from which the expenditures in connection with said estate, as well as the general and living expenses of Dr. Diener and his wife, were indiscriminately checked, and that no separate account of the moneys belonging to the estate was kept by him, nor were the same marked or identified in any manner other than in his own mind.

Williams's Estate.

In view of this testimony, in our opinion, a confidential relationship was established and arose .between Dr. Diener, as agent, and Mrs. Margaret A. Williams, as principal; while ordinarily a confidential relation does not exist between principal and agent, there is no doubt that such a relation may arise between them, if properly established from the facts in the case: Darlington's Estate, 147 Pa. 624; Leedom v. Palmer, 274 Pa. 22; Grace et ux. v. Moll, 285 Pa. 353.

And it is stated in the syllabus of Darlington's Estate, 147 Pa. 624, that, "when such a relation exists, the party in whom confidence is placed is held to the strictest accountability. The burden is upon him to show that a transaction between himself and his principal, by which he derives benefit, was fair and conscientious and beyond the reach of suspicion. The rule is founded upon motives of general policy and is irrespective of any admixture of deceit, imposition, over-reaching or other positive fraud. There must be a full and clear proof that the transaction was the free and intelligent act of the party, fully explained to him (her), and performed with a thorough understanding of the transaction and of its consequences." In our judgment, the burden of proof thus imposed upon Dr. Diener has not been met, and in consequence the agreement or assignment between Mrs. Williams and himself and wife is rendered null and void and of no effect, irrespective of any allegation or proof of actual deceit or fraud on his part.

In view of the foregoing, we have reached the following

### Legal conclusions.

1. Under the will of the decedent, W. R. Williams, his widow, Margaret A. Williams, had the right to use all his personalty and to convey his real estate, and consume it all, if she saw fit, for her proper maintenance and support.

2. At the death of his wife, the said testator directed how and among whom his estate should be divided. Said distribution or division related only to such portion of his estate as had not been used or consumed by his widow.

3. A confidential relationship between the widow of said testator and Dr. C. V. L. Diener, succeeding executor of his estate, arose at or about the time of said testator's death, July 24, 1920, and continued until said widow's death, Sept. 6, 1922.

4. The agreement or assignment, dated June 1, 1922, between the said Margaret A. Williams, widow of this decedent, and Dr. C. V. L. Diener and wife, is held to be null and void and of no effect, so far as the same affects the disposition and distribution of said decedent's estate.

5. The funeral expenses of said Margaret A. Williams, if the same were paid by C. V. L. Diener or his wife out of their personal funds, should .be allowed against and paid by this estate.

6. The costs of audit should be paid out of the estate.

7. The balance in the hands of Dr. C. V. L. Diener, accountant, as shown by his account, should be distributed in accordance with the directions contained in said testator's last will and testament and this opinion and decree.

### Decree.

And now, Jan. 10, 1927, upon argument by counsel and after due consideration, it is hereby ordered, adjudged and decreed that the auditor's report heretofore filed in this estate be referred back to the auditor, in order that it may be corrected, and the balance shown to be due and in the accountant's hands may be distributed in accordance with the directions contained in the testator's will and this opinion and decree.

From S. D. Gettig, Bellefonte, Pa.